AMOS WILDER *vs.* MAINE CENTRAL RAILROAD COMPANY.

August, 1874.—February 14, 1876.

*Railroad. Negligence. Fence.*

The statute requiring railroad corporations to inclose the land taken for their road with fences is a police regulation, designed to secure the safety of the public travel and transportation, and is obligatory, as such, upon all railroad corporations, whether chartered before or after its passage.

A parol agreement between a railroad company and an adjoining owner, for the removal and discontinuance of a fence on the line of the railroad, does not run with the land, and cannot therefore bind his grantee.

Where a horse escaped from his owner's land on to an adjoining railroad and was killed by the railroad company's locomotive, *held*, that the mere fact of his turning his horse upon his land where there was no fence between it and the railroad, when it was the legal duty of the railroad company to build it, was not proof of contributive negligence on his part.

ON EXCEPTIONS AND MOTION.

CASE for killing the plaintiff's horse at Hallowell, in June, 1871, by running upon him with an engine.

At the trial, March term, 1874, the verdict was for the plaintiff, with damages assessed at $1000. The defendants moved to have the verdict set aside as against law and evidence, and filed exceptions.

The plaintiff was a third owner in common of the oil cloth factory, and the lot connected therewith which extended on both sides of the railroad. The plaintiff's horse escaped from this lot, then unfenced, on to the track at the time of the killing.

There was evidence tending to show that the defendant company originally fenced their track from the oil cloth lot, and that the fence was removed many years previously at the request of Stickney, a member of the firm of Stickney & Page, owner of the *locus.* The firm afterwards took in Towle as a partner; Stickney died, and the plaintiff purchased his interest in the real estate and mills which were all included in the partnership business.

The defendants contended that they were not bound to fence their road under the general statutes of the state, because their charter and the location of their road were prior to the statute; that they were not bound to fence their road through the plaintiff's lot, because the same was not inclosed or improved land within the meaning of the statute, and because the owners and occupants had agreed with the defendant that they should not fence the same; and that they were not liable because the negligence of the plaintiff caused or contributed to the loss of his horse; and they excepted to such parts of the charge as were adverse to these positions.

The presiding justice, among other things, instructed the jury as follows:

"The first point, made then, in regard to this, is, that the railroad is under no circumstances bound to make a fence, because it is said that the charter of this road was granted previous to the law passed by the legislature, requiring railroads to build fences. I reserve this question for future consideration, for the full court, where it can be more carefully examined than it can be here, and

hold that this road would be bound by the statute which has been referred to, as having been first passed in 1842. Then under that statute this road and others in the state are bound to build fences along the line of their road on each side, provided they pass through inclosed or improved lands.

I understand land to be improved, when it is occupied for the purpose of obtaining a profit from the produce which may grow upon it, pasturing, and mowing, or tillage, or anything of that kind. I understand that to be the sense in which the word is used in the law which has been read in your hearing. If it is not improved land, in the sense to which I have called your attention, the road would not be under obligation to build a fence. If it was improved land at that time, in the sense which I have defined to you, then the road would be under obligation, so far as that is concerned.

I instruct you for the purpose of this trial that the agreement, whatever it was, made with Stickney as a member of that firm, would be binding upon the firm. He had a right, so far as he himself was concerned and so far as the firm then existing was concerned, to release this railroad company from building a fence. He had no such right, to be sure, so far as the public was concerned, and if any passenger had been injured or any property of any person being carried over the road had been injured or destroyed, for the reason that any animal escaped from that and got upon the road, the railroad still might have been liable notwithstanding the agreement.

The agreement, then, goes no further than to those persons who are parties to it, and who are bound by it; and the party owning the land, may assume the obligation, if he chooses, to keep up the fence; and if he does, so far, and so long as that obligation continued, he could have no claim himself upon the railroad for any of his animals that might escape through that fence, or for the want of a fence upon the track.

So I hold for the purpose of this trial, that a member of the partnership business, in relation to that which pertained to the partnership, would have authority to bind the partnership. If they were then occupying this land, and used it for partnership

purposes in carrying on their partnership business, one of the members of the firm would have a legal right, so far as that firm was concerned, to release the company from building the fence. That agreement would continue in force and be binding upon that partnership. It would not be binding, as has been held in our court, upon any successor or any grantees. Now when a partnership is existing, and one partner goes out and another comes in, that is a regular dissolution of that partnership. And a new one being formed, they would be the successors of the others, and, therefore, I instruct you in this case that whatever that contract might have been between Stickney, (as representing that partnership,) and the railroad company, that would not be binding upon his successors. When the partnership became changed the contract would be no longer in force.

I instruct you for the purpose of this trial that the mere fact of there being no fence is not proof that he was negligent in turning his horse out there. That is to say, he had a right to use his own land in the ordinary way, and the railroad company could not screen themselves simply upon the ground that they had neglected to perform the duty which was incumbent upon them. But this principle of law is subject of course to qualifications. In one instance it may not have been a negligent act and in another instance it may have been a negligent act. Here is a question of fact for the jury to settle. You will take into question the nature of the road, the manner in which it was built, the dump which extended from near the crossing to the bridge, the nature and character of the horse, and all the circumstances bearing upon that, and decide for yourselves whether the plaintiff was guilty of negligence in turning his horse out there under the circumstances in which he did. It is not to be taken as a matter of law that he was negligent, neither are you to consider the simple fact that he turned his horse in, knowing that there was no fence; but you are to take all these circumstances into consideration; you take that of course, so far as it is a fact, that there was no fence there, (because if there had been a fence this question would not have arisen,) but not as bearing upon the question of negligence;

but taking all these circumstances into consideration—was it an act of negligence on his part to turn his horse in ?

If the company was under obligation to build the fence at that time and maintain it and the plaintiff was not negligent in turning his horse in at that time, the company would be liable. Otherwise, upon this branch of the case, they would not be."

*J. W. Bradbury, jr.,* for the defendants.

The defendants were not required to fence the *locus in quo*.

I. Their charter, granted in 1836, specially exempts the corporation from the provisions of the act of March 17th, 1831. It is not therefore subject to the future action of the legislature, except in the manner provided in the charter itself; and that does not authorize any action in regard to fencing.

The act requiring railroads to fence was passed in 1842, and the act subjecting them to damages, caused by the neglect, in 1853.

These acts cannot affect the existing relations between this corporation and the land owner.

As the terms of these relations were established by the charter, they are not to be interfered with by any subsequent legislation.

The legislature, by its own act, had surrendered the power to interfere and had stipulated that it would not.

It was under this condition that the relations between the land owner and the corporation had become fixed, and the damages for taking the land appraised and paid.

It was not competent, therefore, for a subsequent legislature to change the conditions or add to the burdens of either party. Any act attempting it would be clearly retroactive and unconstitutional. And the instructions given on this point were therefore erroneous. *Baxter* v. *Boston & Worcester R. R.,* 102 Mass., 383.

II. Again, under the act of 1842, the relations between the parties were not changed. That act, if constitutional, would only subject the defendants to the penalty for neglect to fence, but it would not authorize the plaintiff to recover in *this* action, if he could not, independent of its passage.

III. The *locus* was a mill yard, and not inclosed or improved land, such as railroads are required by the statute to fence.

The burden is upon the plaintiff to establish the fact that the defendants were bound to fence. 102 Mass., above cited.

IV. The fence having been removed at the request of, and under an arrangement made with, the managing owner, Mr. Stickney, under whom the plaintiff holds, and whose interest he has, he cannot repudiate that agreement; in fact, he had never done so, and had never intimated to the defendants any desire to have the fence rebuilt. It was an agreement acted upon by the defendants, and it is not competent for the plaintiff to repudiate it without notice. It was competent for Stickney to make such an agreement. *Tombs* v. *Rochester & Syracuse Railroad*, 18 Barb., 583. *Talmadge* v. *Rensselaer & Saratoga Railroad*, 13 Barb., 493.

*O. D. Baker*, with whom was *J. Baker*, for the plaintiff, contended that R. S., c. 51, § 20, applies as well to railroads chartered and located before, as after the passage of the statute in 1842, c. 9, § 6. The statute of 1842 does not conflict with the defendants' charter, or the constitution of the state; for its enactment was in the exercise of a police power, vital to the safety of the public, which the sovereign cannot alienate.

The agreement of the defendants with Mr. Stickney, one of three prior owners, and grantor of the plaintiff, was not binding on the plaintiff.

The agreement was by parol. It was made with only one of three partners, and was never even known to the other two.

I. It has been settled ever since the time of Lord Kenyon, that one partner cannot bind the partnership land even by deed without a special authority, of which there is no pretense here. *Harrison* v. *Jackson*, 7 T. R., 203.

But if one partner cannot bind partnership land by deed, much less can he by parol. And if he cannot bind the land, how can his agreement run with the land? And if he cannot bind an existing partnership of which he is a member, how can he bind a future partnership of which he is not a member?

II. But whatever the power of partners between each other, a parol contract can never run with the land or affect even the

grantees of the person contracting.    1 Smith Lead. Cas., 22. Notes to *Spencer's case.  Bickford* v. *Parsons,* 5 C. B., 920.

III. In any view, "an agreement like this for the nullification of a statute of this state cannot be regarded as having any effect upon the rights of any one who is not a party to it nor shown to be cognizant of or assenting to it." It amounts at best only to a personal estoppel. *Gilman* v. *Eur. & N. A. R. R.,* 60 Maine, 235. *Shepard* v. *Buffalo, &c., R. R.,* 35 N. Y., 641. *St. Louis R. R.,* v. *Todd,* 36 Ill., 409.

IV. Every person has a right to "use his own land in a natural and ordinary way for the purposes for which it is fit," and to do so is not negligence; and the mere fact that the plaintiff turned his horse on his own land, knowing it to be unfenced, is not evidence of negligence. Shear. & Red. on Neg., § 471. *Shepard* v. *Buffalo R. R.,* 35 N. Y., 641, (overrules the cases in Barb.) *Rogers* v. *Newburyport R. R.,* 1 Allen, 16.    *Gardner* v. *Smith,* 7 Mich., 410, 420. *McCoy* v. *Cal. Pac. R. R.,* 40 Cal., 532. 6 Amr. R., 623. *St. Louis R. R.* v. *Todd,* 36 Ill., 409.

*A. Libbey,* in reply.

On the point of contributive negligence, he contended that the instructions of the presiding justice did not present the correct rule of law applicable to the case.    There was no controversy as to the facts, as to the condition of the road, its situation and manner of construction, the situation of the lot and mill yard, the number of trains and the times they passed the mill, the want of a fence, and the acts of the plaintiff in turning his horse loose. The presiding judge should have held as matter of law, that the facts not disputed did not prove due care on the part of the plaintiff. *Lewis* v. *B. & O. R. R. Company,* in court of appeals. W. D., reported in Am. L. Reg. Mag., 1874, p. 284, and cases cited in note by F. R.    *Eames* v. *Salem & L. R. R. Co.,* 98 Mass., 560. *Gilman* v. *Deerfield,* 15 Gray, 577.

DICKERSON, J.    The statute requiring railroad corporations to inclose the land taken for their road with fences, is a police regulation, designed to secure the safety of the public travel and transportation, and is obligatory, as such, upon all railroad corporations

whether chartered before or after its passage. *State* v. *Noyes,*
47 Maine, 189. *Ind., &c., Railway* v. *Townsend,* 10 Ind., 38.
1 Rod. on Railways, 493 and 494. 2 same, 428.

The counsel for the defendants contend that the land of the
plaintiff adjoining the defendants' road, was not "inclosed" or
"improved," and was not, therefore, required to be fenced against
by the defendants. We think otherwise. Though the land was
used partly as a mill yard, it was also mowed, and occasionally
used by animals for grazing. The cases cited by the counsel are
distinguishable from this case. It appears from them that a rail-
road company is relieved from the obligation to fence against
adjoining lands, when such fence would be a public nuisance, or
prevent access to a mill through whose yard the railroad passes,
or at points where its engine house, machine shop, car house, wood
house, wood shop and depot are so situated as to render a fence
unnecessary. These are exceptional cases and do not include the
one under consideration.

It is well settled, upon both principle and authority, that a parol
agreement for the removal and discontinuance of a fence on the
line of a railroad, between the owner of the land and the railroad
company, does not run with the land, and cannot, therefore, bind
his grantee. *Gilman* v. *Eur. & N. A. R. R. Co.,* 60 Maine,
235. *St. L. & A. R. R. Co.* v. *Todd,* 36 Ill., 409.

There can be no question, therefore, but the defendants were
guilty of negligence in not building a fence upon the line of their
road adjoining the plaintiff's land; and the remaining question
to be determined is, whether the plaintiff is guilty of contributory
negligence in turning his horse out upon his land, knowing that
it was not fenced. The owner of land has a right to use it in a
natural and ordinary way for the purposes for which it is fit.
This right does not depend upon the performance or non-perform-
ance of any duty or obligation enjoined by law upon another in
respect to his land. He has a right to expect that the require-
ments of law will be complied with, and to act accordingly; nor
does his knowledge that they have not been, affect his right of
use one way or the other. If it did, the neglect of another to
obey the law might operate to prevent him from the lawful use

of his own property.    The common law made it the duty of the owner of land to guard against the escape of his cattle therefrom, but the statute devolves this duty upon the railroad company in the case under consideration, and the rights of the parties must be determined in accordance with this change.    To hold the land owner to the same care of his cattle, as the common law required, would be to disregard the statute, and render it inoperative. It was for the defendants to use the necessary care to prevent the escape of the plaintiff's horse on account of their neglect to build the fence.    Shear. & Red. on Neg., § 471.

In *Rogers* v. *Newburyport R. R. Co.*, 1 Allen, p. 17, which was tort for the loss of a colt run over by the defendants' cars, the court say, "the plaintiff had a right to place his colt in his pasture to feed, and was under no obligation to the defendants to use any care to prevent escape by reason of their neglect to maintain the fence.    It was for them to use the necessary care to prevent such an escape."    *Gardner* v. *Smith*, 7 Mich., 410.

In *McCoy* v. *Cal. & Pac. R. R. Co.*, 40 Cal., 532, the line of the road was not fenced where it passed through the field occupied by the plaintiff, and the live stock of the plaintiff running in this field strayed on to the road and were killed by the defendants' train; and the court held that these facts made out a *prima facie* case against the defendants, and also, that the plaintiff was not guilty of contributory negligence, from the fact that he knew that the road was not fenced, when he turned his cattle into the field.    *Kellogg* v. *Ch. & N. W. R. R. Co.*, 26 Wis., 223.

The presiding justice stated the rule of law correctly when he instructed the jury that the plaintiff had a right to use his land in the ordinary way, and that the mere fact that the railroad adjoining his land, was not fenced, was not proof that he was negligent in turning his horse out there.    The question of fact, whether, under all the circumstances of the case, it was negligence in the plaintiff to turn his horse out as he did, was submitted to the jury under appropriate instructions.    It was the exclusive province of the jury to determine this question, and they found it in favor of the plaintiff.    The jury were aided in their investigation by a plan of the premises, verified and explained by the engineer who drew

it. They also saw the witnesses and could judge of their credibility from their appearance on the stand. It is next to impossible for the court in this class of cases to put itself in the situation of the jury so as to be able to say whether or not its decision would have accorded with theirs if it had occupied their place at the trial. Hence the wisdom of the rule that the court will not set aside a verdict as against evidence or the weight of evidence unless it is so manifestly so, as to render it apparent that the jury have mistaken or disregarded the evidence. In reviewing the testimony in this case, we do not find such ground for setting aside the verdict.                    *Motion and exceptions overruled.*
*Judgment on the verdict.*

APPLETON, C. J., WALTON, BARROWS and VIRGIN, JJ., concurred.