Argued 11 April; decided 24 April, 1899

## SIGLIN v. COOS BAY COMPANY.

[56 Pac. 1011.]

1. TRIAL—PAROL EVIDENCE OF OWNERSHIP OF FENCE.—In an action under Hill's Ann. Laws, § 3461, for injuries to stock caused by another's barbed-wire fence, built without a board or pole thereon, the ownership of the fence may be proved by parol.

2. EVIDENCE—HARMLESS ERROR.—Where, in an action for injuries to stock by a defective fence, plaintiff raised a presumption of defendant's ownership, within Hill's Ann. Laws, § 776, subd. 12, by proof of the exercise of acts of ownership prior to the accident, the admission of evidence that defendant repaired the fence after the accident was harmless.

3. CONTRIBUTORY NEGLIGENCE—FENCES.—Plaintiff's turning his stock loose in a highway with knowledge that a barbed-wire fence along such highway had no board or pole thereon, as required by Hill's Ann. Laws, § 3461, is not guilty of contributory negligence precluding a recovery, under that section, for injuries to the stock caused by the fence.

From Coos:    J. C. FULLERTON, Judge.

Action by Z. T. Siglin against the Coos Bay, Roseburg & Eastern Railroad & Navigation Company to recover damages for injuries to a horse.    Judgment for plaintiff, and defendant appeals.    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Joseph W. Bennett.*

For respondent there was a brief over the names of *D. L. Watson, James Watson,* and *D. L. Watson Jr.,* with an oral argument by *Mr. D. Lowry Watson.*

Mr. Justice Moore delivered the opinion of the court.

This is an action to recover the value of a horse which plaintiff was compelled to kill in consequence of its being injured by coming in contact with a barbed-wire fence constructed and maintained by defendant along the line of the right of way of its railroad. It is alleged in the complaint that the defendant constructed and maintained a fence at the place where the horse was injured, composed of four barbed wires, having no board or pole thereon; that the posts upon which the wires were strung were placed so far apart that the wires sagged nearly to the ground, so that a horse coming in contact therewith would become entangled and thrown down; and that, owing to such faulty construction, it became and was dangerous, of which defendant had knowledge; that, in consequence of defendant's negligence in constructing its fence without a board or a pole thereon, and in knowingly maintaining it in a dangerous condition, plaintiff sustained damage, by the means and in the manner aforesaid, in the sum of $75, the value of the horse. The defendant denied the material allegations of the complaint, and averred that plaintiff was guilty of contributory negligence in unlawfully permitting his horse to run at large on premises not in his possession. The reply having put in issue the allegations of new matter contained in the answer, a trial was had, resulting in a judgment for plaintiff in the sum of $56.25, and defendant appeals.

1. It is contended that the court erred in admitting oral proof tending to show that defendant was the owner of the fence by which the horse was injured. The plaintiff, appearing as a witness in his own behalf, was permitted to answer, over the defendant's objection and exception, the following question, "Who was the owner

of that fence?'' by saying, ''The Coos Bay, Roseburg &
Eastern Railroad & Navigation Company own it.'' It is
argued that, the fence being a part of the realty upon
which it was built, its ownership could not be proved in
this manner. True, a fence is generally considered to
be a part of the realty upon which it is built, but it is
not universally so : 7 Am. & Eng. Enc. Law (1 ed.),
905. ''When one,'' says Mr. Ewell in his work on Fix-
tures (p. 60), ''builds a house or fence, or places any
other erection upon the land of another with his permis-
sion, with the intention that it be held as the property
of the builder, it continues personal property, and the
owner may remove it when the license is withdrawn.''
If the principle contended for by defendant's counsel be
true, then it follows that a railroad company could escape
all liability for damages that might result from main-
taining a fence composed of barbed wires, having no
board or pole thereon, if such fence were placed beyond
the limits of its right of way ; and, if the ownership of
the fence is to be conclusively established by proof of
the ownership of the realty upon which it is built, then
it also follows that the person upon whose land such a
fence might be built by a railroad company would be
liable to the owner of any stock that should be killed or
injured thereby, for it is the owner of the fence built
with barbed wires, without a board or pole thereon,
whom the statute makes liable in such cases : Hill's
Ann. Laws, § 3461.*   If the fence had been built within
the limits of the right of way by the owner of the land
through which the railroad was constructed, a certified

---

*NOTE.—This section is as follows: "All cases in which stock shall be killed
or injured by coming in contact with barbed wire fences which are not at the
time of the injury kept in substantial compliance with the terms of this act, the
owner of the stock so killed or injured shall have the right to recover from the
owner of such fence, by action of the law, a sum equal to the amount of the
injury sustained by him in the killing or injury to his stock as aforesaid."

copy of defendant's right of way deed, supplemented by testimony to the effect that the fence was constructed within the limits of the premises or easement granted, would make out a *prima facie* case against it; but such evidence would not be conclusive, and parol proof would undoubtedly be admissible to show who was the real owner of the fence : *Brown* v. *Bridges*, 31 Iowa, 138. No error, in our judgment, was committed by the admission of this testimony.

2. Plaintiff, having testified that defendant built the fence, and that he had seen its employees repairing it, was permitted to answer, over defendant's objection and exception, the following question, "State whether, since the accident, you have seen them exercising ownership over the fence," by saying, "After the horse was injured, some men repaired the fence. The same men were the section crew, and worked on the railroad, and also worked on repairing fences whenever there was any posts or anything out along the fence. The section men would put in the posts, and sometimes I have seen them nail up the wires to the posts, or logs, or trees, whatever happened to be in line." It is contended that the court erred in admitting this testimony. But, evidence having been received tending to show that defendant, prior to the injury, built the fence and kept it in repair, these acts of ownership over the property raised a disputable presumption that it was the owner thereof (Hill's Ann. Laws, § 776, subd. 12); and, this being so, no substantial injury could have resulted from the admission of evidence tending to show that, after the injury, defendant continued to exercise acts of ownership over the fence.

3. It is contended that the evidence conclusively shows that plaintiff was guilty of such contributory negligence in permitting his horse to become entangled in the fence as to preclude a recovery for the injury sus-

tained, and hence the court erred in refusing to grant a
judgment of nonsuit. The substance of plaintiff's tes-
timony is to the effect that, on the day the injury oc-
curred, he was engaged in hauling hay on a sled with
his horses, in the county road across certain premises of
which he was in possession; that his team, having been
frightened by a passing train, suddenly turned aside,
breaking the sled; that he thereupon unhitched the
horses, fastened the tugs to the hames, and turned them
loose, with their bridles on, to graze in the county road,
while he repaired the sled; that the horses, turning
from the highway, went along a path through the brush,
about two .rods, to the barbed wire fence, in which one
of them became entangled, and sustained the injury
complained of; that this horse had been theretofore
caught in the wires of said fence at a point about fifty
yards from where the injury occurred; and that plain-
tiff, at the time he turned the horses loose, knew the
character and condition of the defendant's fence. In
*Cressey* v. *Northern Railroad Co.*, 59 N. H. 564 (47 Am.
Rep. 227), it is held that railroad companies neglecting
to fence their tracks are liable to the owner of adjoining
lands for injury to his cattle on the track, although he
turned them out to graze, knowing of that neglect. Mr.
Justice STANLEY, in rendering the decision, says: "The
plaintiff's mare was grazing upon his land. It is not
material that it was on land in which the public had an
easement, since her grazing did not interfere with the
public rights, and, subject to these rights, the plaintiff
was entitled to the use of the land within the limits of
the highway as fully as to the use of any land he owned."
Further in the opinion it is said: "As we have seen, the
plaintiff's rights in the highway were the same as in any
other land owned by him, except so far as they were
modified by the public rights; and in such cases neither

his rights nor the defendants' liabilities are affected by the plaintiff's want of ordinary care. If the plaintiff had the right to turn his mare into the highway to feed, due care was not required of him to prevent her escape to the defendants' track. The fact that they had neglected to fence their roadway, and the plaintiff's knowledge of that fact, did not deprive him of the rightful use of his land. The defendants' neglect did not impose upon the plaintiff any obligation, or put him under any disability, with respect to the reasonable enjoyment of his property. The defendants electing to use their road without complying with the law which required them to fence it, they assumed the risk of the accident which happened in this case as a consequence of their neglect."

In *McCoy* v. *California Pac. R. R. Co.*, 40 Cal. 532 (6 Am. Dec. 623), it is held that, where plaintiff's horses and mules were running in his field, through which defendants' railroad passed, and upon which they strayed, and were injured, the owner of the stock was not guilty of contributory negligence from the fact that he knew the road was not fenced when he turned his stock in the field. In *Wilder* v. *Maine Cent. R. R. Co.*, 65 Me. 332 (20 Am. Rep. 698), an action having been brought to recover the value of a horse killed by a locomotive on defendants' railroad, which passed through plaintiff's land, it was held that he was not guilty of contributory negligence in turning the horse upon such land, knowing the track was not fenced, when it was the legal duty of the railroad company to build the fence. In *Congdon* v. *Central Vt. R. R. Co.*, 56 Vt. 390 (48 Am. Rep. 793), it is held that a railroad company neglecting to maintain a proper fence is liable to the owner of adjoining lands for his horse, escaping through a defect in the fence, and killed by a train, although the owner knew of the defect, and that the horse was breachy, and there was no negligence

in running the train. The plaintiff, being in possession of the land through which the railroad and county road passed, possessed the right to turn his horses on the latter road to graze, so long as he did not interfere with the right of the public therein; and his knowledge of the character and condition of the barbed-wire fence does not render him guilty of such contributory negligence as to preclude his right of recovery; for, as was said by Mr. Justice COOLEY in *Flint & P. M. R. R. Co.* v. *Lull*, 28 Mich. 510: "Indeed, if contributory negligence could constitute a defense, the purpose of the statute might be, in a great measure, if not wholly, defeated; for the mere neglect of the railway company to observe the directions of the statute would render it unsafe for the owner of beasts to suffer them to be at large, or even on his own grounds in the vicinity of the road; so that, if he did what, but for the neglect of the company, it would be entirely safe and proper for him to do, the very neglect of the company would constitute its protection, since that neglect alone rendered the plaintiff negligent." The notice of appeal assigns other alleged errors, but we do not deem them of sufficient importance to merit consideration, and hence it follows that the judgment is affirmed. AFFIRMED.