## STATE *v.* FRANCIS BUCK.

October Term, 1901.

Present: ROWELL, TYLER, MUNSON, START and WATSON, JJ.

Opinion filed November 29, 1901.

*Malicious destruction of property—V. S. 5034—Parol agreement as to location of line fence—Advice of counsel—Meaning of term "maliciously."*

The title to a division fence is not necessarily determined by the ownership of the land on which it stands.

An unrepudiated parol agreement as to the location of a division fence is so far binding between the parties to it, as to determine the ownership of the fence, notwithstanding V. S. 3580, although it does not stand upon the true line.

In an indictment under V. S. 5034 for cutting down and destroying a fence belonging to another, parol evidence that the respondent had so far consented to its erection where it stood when cut down that it remained the property of the party erecting it, is admissible and raises an issue for the jury.

The question of ownership of the fence being controlling, evidence relating to the true location of the division line is immaterial.

Advice of counsel based upon a partial disclosure of known material facts, affords no protection to one acting in good faith under it.

Error will not be predicated upon an unanswered question, though improper, or upon the exclusion of a question unaccompanied with an offer.

INDICTMENT for cutting down and destroying a fence owned by one Palmer. Plea, not guilty. Trial by jury at

the June Term, Orange County, *Stafford,* J., presiding.   Verdict, guilty.   Judgment and sentence thereon.   The respondent excepted.

*Richard A. Hoar* and *George L. Stow* for the respondent.

Parol evidence to establish Palmer's title to the fence was inadmissible.   V. S. 3580.

It was error to allow the state to ask Palmer who occupied the land on which the fence stood.   It was not material to the issue.   While the exceptions do not directly give the witness' answer, it sufficiently appears from the arrangement between the respondent and McDonald shown by the exceptions, what the answer was.

· The evidence as to the damage occasioned by respondent's acts should have been received, that the proper sentence might be imposed upon conviction.   V. S. 5035; B. S. C. (2d Ed.) s. 445; *Harness* v. *State,* 27 Ind. 425.

The court should have charged the jury, agreeably to the request, that if the respondent acted under advice of counsel, honestly believing he had a right so to do, he was not guilty of the offense charged.   *State* v. *Landreth,* 2 Car. L. R. 446; Bishop on St. Crimes, §437; 2 Russ. on Crimes, 545; *Gaforth* v. *State,* 16 Tex. Ap. 172; *Palmer* v. *State,* 45 Ind. 388; *State* v. *Hause,* 71 N. C. 518; *State* v. *Luther,* 8 R. I. 151.

*David S. Conant,* State's Attorney, for the state.

The question of title to the fence was material and oral evidence was admissible to prove it.   The agreement to submit the question of the disputed line to arbitration, was binding. A division of a line fence by parol agreement is good between the parties so long as they act under it.   *Hitchcock* v. *Tower,* 55 Vt. 60; *Blood* v. *Spaulding,* 57 Vt. 422; *Scott* v. *Grover,* et al. 56 Vt. 499.

The title to the fence and not the title to the land being the material question, the evidence disclosed by the field book and the original town plan, was immaterial and inadmissible.

The testimony of Emery as to the damages was properly excluded. The destruction of the fence implies some damage, which is all the statute requires. *State* v. *Broderick,* 61 Vt. 421.

START, J. The respondent was indicted for cutting down and destroying a fence owned by one Palmer, contrary to the provisions of V. S. 5034, which provides, in part, that if a person wilfully and maliciously cuts down, carries away, or destroys a fence, bars, gates, or rails, or injures a sleigh or wheeled vehicle for the conveyance of persons or property, or injures or destroys any other goods or chattels, the property of another, which are the subject of larceny, he shall, if the offense is committed openly, and without intended secrecy, be imprisoned not more than six months, or fined not more than $200. At the close of the evidence the respondent moved for a verdict. The motion was overruled, and the respondent excepted. Thereupon, the respondent requested the court to charge the jury that, unless they found beyond a reasonable doubt that the land on which the fence stood was owned by Palmer, they must acquit the respondent. To the failure of the court to comply with this request, the respondent excepted.

The testimony is not referred to, but it sufficiently appears from the exceptions and the charge of the court, which is made a part of the exceptions, that the respondent and Palmer were the respective owners of adjoining farms; that the fence between the farms was crooked, and a controversy existed as to the true line; that no evidence as to the true line was offered by the prosecution, and that there was no evidence tending to show that there had ever been any agreement in writing respecting the fences. The prosecution proceeded

upon the theory that the ownership of the land where the fence stood was immaterial, and, for the purpose of showing that the fence was owned by a person other than the respondent, introduced evidence, subject to the respondent's exception, tending to show that the respondent and Palmer mutually agreed that one Foster should run the line between the farms, and they would abide by the line that should be run by him; that Foster run the line; and that thereupon Palmer, without objection, notice, or protest from the respondent, proceeded and built the fence in question upon the line so run by Foster. This evidence was not submitted to the jury for the purpose of having them find the true boundary line between the farms, but was submitted to them upon the question of whether the respondent had so far consented to the erection of the fence where it stood at the time it was cut down by the respondent that it continued to be the property of Palmer; and for this purpose it was admissible. In *Scott* v. *Grover*, 56 Vt. 499, 48 Am. Rep. 814, and *Blood* v. *Spaulding*, 57 Vt. 422, it is held that adjoining landowners may make a parol agreement as to a division fence that is binding upon themselves until repudiated. While these holdings are not controlling in this case, they show that parol evidence of agreements as to division fences has been received, and that this court has given effect to such agreements while they remained unrepudiated, notwithstanding V. S. 3580, which provides for an agreement in writing.

While a fence is generally considered a part of the realty upon which it is built, it is not universally so. As between the parties to an agreement made before a fence is built, the material in the fence may be made to retain its character as personalty. 12 Am. & Eng. Enc. Law (2d Ed.) 1060; *Siglin* v. *Navigation Co.*, 35 Or. 79, 56 Pac. 1011, 76 Am. St. Rep. 463; *Harris* v. *Scovell*, 85 Mich. 32, 48 N.W. 173; *Curtis*

v. *Leasia,* 78 Mich. 480, 44 N. W. 500; *Mott* v. *Palmer,* 1 N. Y. 564; *Gilreath* v. *State,* 96 Ga. 303, 22 S. E. 907; *Jamison* v. *State,* 27 Tex. App. 442, 11 S. W. 483. The fact that there was no evidence tending to show the true boundary line between the farms, or of an agreement in writing respecting the fences, is not necessarily controlling. Notwithstanding the absence of such evidence, the parol evidence may have tended to show that the fence, or the material of which it was made, was the property of a person other than the respondent. Without the evidence before us, we cannot say that such was not its tendency. If the fence was placed by Palmer where it stood at the time it was destroyed by the respondent, with the consent of the respondent, under circumstances which tended to show that the parties mutually understood that it, or the material of which it was made, was to remain the property of Palmer, it was rightfully there; and while there, without notice to remove it, or protest from the respondent, it, or the material of which it was made, continued to be the property of Palmer; and its destruction by the respondent was a destroying of property belonging to another, within the meaning of the statute. Parol evidence to show that Palmer owned the fence being admissible, the question of ownership was for the jury; and the respondent's motion for a verdict of acquittal and his second request were rightfully denied.

The respondent's offer to show what he said to one McDonald about the true boundary line between the farms was properly excluded. The prosecution offered no evidence of the true boundary line, but relied for conviction upon evidence tending to show that the fence was placed by Palmer where it was at the time it was destroyed by the respondent, with the consent of the respondent. Upon this issue, what

the respondent said about the true line when Palmer was not present, was not admissible.

The respondent offered in evidence the original plan of lots in the town of Washington and the original field book of the surveys of the lots, for the purpose of showing the variations between the plan and field book in the length of the Palmer farm. This offer was excluded, and the respondent excepted. This evidence was not material to any issue in the case, and was properly excluded. The prosecution did not claim, nor did it introduce evidence tending to show, that the fence stood upon the true boundary line. As before stated, conviction of the respondent was, by the evidence of the prosecution, made to depend upon whether the respondent had so far consented to the placing of the fence where it stood when cut down by the respondent, that it remained the property of Palmer, and upon this issue the rejected evidence was immaterial.

The prosecution called Palmer as a witness, and asked him who occupied the land on which the fence was. The respondent objected to this question. The objection was overruled, and the respondent excepted. It does not appear what answer was given, nor does it appear that the question was answered; therefore, error does not appear. It was incumbent upon the respondent to show by his exceptions that the question was answered, and what answer was given. Without such showing, the court has no means of knowing whether the ruling was prejudicial to the respondent. *Carpenter* v. *Corinth,* 58 Vt. 214, 2 Atl. 170.

The respondent called one Emery, and asked him what it would cost to rebuild the fence, and what damage was caused by its destruction. These questions were excluded, and the respondent excepted. It does not appear what the answer of the witness would have been, nor does it appear that there was

an offer to show any fact by him; therefore, error does not appear. *Carpenter* v. *Willey,* 65 Vt. 168, 26 Atl. 488; *State* v. *Noakes,* 70 Vt. 247, 40 Atl. 249; *Baker* v. *Sherman,* 71 Vt. 439, 46 Atl. 57; *Roach* v. *Caldbeck,* 64 Vt. 593, 24 Atl. 989.

No exceptions were taken to the charge of the court as given, but the respondent excepted to the refusal of the court to comply with his second request, namely: "If the respondent cut down the fence on land formerly occupied by him, under advice of counsel, and honestly believed he had a right to do so, then he was not doing any wilful and malicious injury, and it is the duty of the jury to acquit him." The court instructed the jury on this point as follows: "If the respondent went to reputable lawyers, and stated the case fairly, just as he understood and knew the facts to be,—all the material facts as he understood them,—he would have a right to rely, if he acted honestly and in good faith, upon what counsel told him; but he could not go and make a partial disclosure of the facts, and get an opinion that would be a protection to him. Whether he received the advice he says he did, is a material question, as bearing on his good faith; because, as I have said before, you must find that he did not act in good faith, but acted maliciously." The court also instructed the jury that "maliciously" meant "out of malice," "with an evil motive," in distinction from "honesty" and "good faith." In view of the evidence, this instruction was all the respondent was entitled to upon the subject of his request. There was testimony given by the respondent himself, which tended to show that in cutting down the fence he acted upon the advice of counsel, and that he obtained the advice by withholding from counsel material facts within his knowledge.

*Judgment that there is no error, and that the respondent take nothing by his exceptions. Let execution of the sentence be done.*