## M. A. LEWIS *v.* JOHN CRANE & SONS.

May Term, 1903.

Present: TYLER, START, WATSON, and HASELTON, JJ.

Opinion filed November 21, 1905.

*Negligence—Master and Servant—Partnership—Injuries to Servant—Evidence—Expert Testimony—Damages—Opening Statement—Witnesses—Re-Examination—Pleading—Duplicity—Presumptions Against Error—Motion for New Trial.*

In an action on the case for negligence brought against defendants "as individuals or as partners," defendants are not entitled to have plaintiff ordered to elect whether he will proceed against defendants as individuals or as partners.

The fact that plaintiff's counsel, in outlining his claim as to the law of negligence in his opening statement, deviated somewhat from an accurate definition of negligence was no ground of exception, where he expressly disclaimed a correct legal form for his statement, and reminded the jury that they were to take the law from the court, and said nothing of an inflammatory character, and suggested that the claim of defendants would differ from that of plaintiff.

Duplicity in a declaration is cause for special demurrer only, and cannot be reached by a motion to compel an election.

In an action on the case for injuries to their servant, caused by the alleged negligence of defendants in using an unsafe hook to sustain one end of a swing-staging, evidence of the kind of staging used was admissible.

Evidence that, at the time defendants purchased some ladders at a stated price, the hook in question was given to them by the seller without extra charge, was admissible.

Evidence by a blacksmith, who did some work upon the hook in question before defendants obtained it, as to the character of the hook and to the effect which his work would tend to have in weakening it, and that he told one of the defendants about the hook, was admissible.

Evidence of a witness, who was present when the officer served the writ in the case, that the wife of one of defendants then showed witness parts of the broken hook, and describing the parts so shown, was admissible.

Evidence of a competent blacksmith, who repaired the hook in question a short time before the accident, as to the ways in which the hook could have been repaired, and that the hook had the characteristics of poor iron, was admissible.

To reserve an available exception to the exclusion of evidence an offer must be made.

Evidence of an experienced painter, who had made great use of swing-stagings, as to the weight which a hook of the size in question would support, and that he would "guarantee" that a staging supported by such a hook would support a certain weight, was admissible.

*Held*, that the witness was not testifying to the safety of swing-stagings in general, but merely to the normal strength of an iron hook of the diameter of the one in question; and that the jury must have understood the witness to have used the word "guarantee" as a strong expression of opinion.

It appearing that the general safety of swing-stagings was not an issue in the case, the evidence of a carpenter of long experience as to whether swing-stagings were suitable for such work as that in question was properly excluded.

Evidence as to what defendant would have done with the hook in question, if he had been told that it was poor iron and not safe, is mere conjecture and was properly excluded.

Evidence that defendant was in charge of the inside arrangement of the building on which work was being done, the injury having occurred while plaintiff was at work on the clapboarding, was inadmissible to show that defendant was in charge of the clapboarding, and should have been excluded.

A party cannot object to the re-examination of a witness on matters which he himself has brought out on cross-examination.

A declaration alleging injuries to plaintiff's legs, back, and body, but not describing with any precision the parts claimed to be injured, is broad enough to authorize the admission of evidence as to the condition of plaintiff's ankle.

Where the objection to evidence of the condition of an injured ankle at the time of trial is that it is not admissible under the declaration, this Court will presume, the bill of exceptions disclosing nothing to the contrary, that the evidence was connected with testimony as to the injuries sustained.

In an action on the case for negligence causing injuries resulting in a stiff ankle, a physician may testify as an expert as to the nature of the stiffness, the motions and actions that it will impede, its causes, and its character as to being temporary or permanent.

In an action on the case for negligence brought against defendants "as individuals or as partners," plaintiff may inquire into the business relations of defendants between themselves, although plaintiff declines to elect whether he will proceed against them as individuals or as partners.

In an action for personal injuries, evidence as to plaintiff's wages at times shortly before the injury complained of is admissible on the question of damages.

A verdict should not be directed for defendants, if one count in the declaration is good and there is evidence to support it.

The fact that a small model of the barn upon which plaintiff was working at the time of the injury, and a painter's staging hook, neither of which had been received in evidence, were discovered in the jury room after the jury had retired to consider their verdict, was not ground for setting aside the verdict or discharging

the jury, it appearing 'that immediately upon the discovery of the fact the court called the jury into the court room and admonished them, and that the jury had agreed upon a verdict for plaintiff before the model and hook got into their possession.

CASE for negligence. Plea, not guilty. Trial by jury at the June Term, 1901, Caledonia County, *Munson*, J., presiding. Verdict and judgment for the plaintiff. The defendants excepted.

*J. P. Lamson,* and *May & Simonds* for the defendants.

*Herbert I. Goss,* and *Dunnett & Slack* for the plaintiff.

HASELTON, J. This was an action on the case in which the plaintiff sought to recover for injuries alleged to have been sustained through the negligence of the defendants. The cause was tried by jury at the June Term, 1901, of the Caledonia County Court. A verdict was returned for the plaintiff and judgment was rendered thereon. The defendants excepted.

The defendants were set up in the writ as John Crane, Charles Crane and George Crane "as individuals or as partners under the firm name and style of John Crane & Sons." Before the introduction of any evidence the defendants moved that the plaintiff be required to elect whether he would proceed against the defendants as individuals or as partners. But the doctrine invoked was not applicable. The action being what it was the defendants were not entitled to have the plaintiff ordered to elect in what way he would attempt to connect the defendants. The motion was properly overruled.

In an opening statement to the jury the plaintiff's counsel briefly outlined his claim with regard to the law of negligence. The gist of the statement in this regard was that negligence is a shortage of duty, but some expressions were

used which deviated from an accurate definition of negligence. Counsel expressly disclaimed that such statement was made in correct legal form, and at the outset reminded the jury·that they were to take the law from the court. There was nothing of an inflammatory character in the statement, and what was said about the law was put forward in a way that suggested to the jury that the claim of the defendants would differ from that of the plaintiff. An exception was taken to the opening statement, but it avails nothing. In so holding there is no intention on the part of the court of giving countenance to the idea that counsel may argue the law to the jury, or read law to the jury, or treat as open questions of law upon which the court has ruled, or in any way seek to have the jury understand that they can do otherwise than to take the law from the court.

At the close of the plaintiff's opening statement the defendants claimed that the plaintiff had alleged more than one cause of action in the same count and moved that the plaintiff be compelled to elect which of such causes of action he would rely upon. The motion was overruled and the defendants excepted. This motion was properly overruled. If the count in question was bad for duplicity and the defendants desired any ruling or action of the court on that account, they should have demurred. *Onion* v. *Clark,* 18 Vt. 363.

The following quotation from the exceptions shows, in brief, what the case on trial was: "The accident occurred November 3, 1899, while plaintiff was working for the defendants on a barn they were building on their premises in Cabot. The negligence complained of was the furnishing by defendants of an unsafe iron hook which sustained one end of a swing-staging." Evidence as to the kind of staging used was received under objection and exception by the defendants, but very clearly nobody could testify intelligibly about the

character of the hook in question unless evidence was received with regard to the kind of staging of which it formed a part and with regard to its function as a part of such staging.

Evidence on the part of the plaintiff tended to show that in the August next before the accident the defendants purchased some ladders at the price put upon them, which was $7.50, and that at the time of the purchase they were shown the staging hook in question and another, and allowed, if they desired, to take the hooks with the ladders without paying anything in addition to the price put upon the ladders; that the defendants paid the price put upon the ladders and took the hooks with them, and that the hooks were put into a stable and were not used until a few days before the accident. The testimony as to the amount paid for the ladders and as to the throwing in of the hooks was received subject to objection and exception on the part of the defendants. But the fact, if it was a fact, that in the sale and purchase of the ladders the hooks were treated as the testimony tended to show they were was a circumstance proper for the jury to consider along with the other circumstances which they might find in their efforts to determine what the defendants knew or ought to have found out about the hook in question. The price paid for the ladders, or any other fact about the ladders, taken by itself, was wholly immaterial, as there was no claim or evidence that the ladders had anything to do with the accident. The price paid for the ladders could not have been received and treated otherwise than as an incident of the transaction through which the defendants got the hook in question, and we discover no error in the reception of the testimony on the part of the plaintiff relative to the acquirement by the defendants of the hooks and ladders.

It appeared that the hook in question was procured by the defendants from one Parlin, and there was evidence tend-

ing to show that one Wales, a blacksmith, did some work upon the hook during the summer before the occurrence of the claimed injury to the plaintiff, and while Parlin had the use of the hook. Wales was a witness in behalf of the plaintiff and was permitted to testify to the character of the hook upon which he did the work and to the effect which his work upon the hook would tend to have in weakening it, and that he told one of the defendants about this poor hook. A part of this evidence was received under objection and exception but all of it was admissible, since, as had been said, there was evidence tending to show that the hook upon which the blacksmith Wales did his work was the hook complained of.

Evidence in the case tended to show that the defendants had no hooks except the two already referred to. In connection with this evidence one Ada Stone, who it appeared was at the defendants' house when an officer went there to serve the writ in the case, was permitted to testify that at that time Mrs. Crane showed the parts of the broken hook, and said witness Ada described the pieces so exhibited, the shape and size of the hook, the angle and location of the break and the indications of welding. This was not evidence on the part of Mrs. Crane but was the evidence of a competent witness tending to show the appearance of the parts of the hook in question when she chanced to see them. This testimony of Ada Stone was received subject to objection and exception by the defendants, but there can be no doubt of its admissibility. In their brief, the defendants' counsel make no serious contention here, but say: "Perhaps the evidence of Ada Stone was admissible." The exceptions state that "at the trial the defendants were requested to produce the parts of the hook which broke, but did not know their whereabouts." This statement makes it doubly sure that there was no error in the reception of the evidence of Miss Stone.

Charles Preston, a carpenter, was one of the plaintiff's witnesses. It is stated in the exceptions that on cross-examination by the defendants he testified as to "the general danger arising from swing-stagings." Thereafter upon re-examination he testified, in effect, that he thought the danger that such a staging would swing away from the building might be avoided. This testimony upon re-examination came in under objection and exception on the part of the defendants. But we assume from the language of the exceptions that the defendants had on cross-examination made Preston their witness in respect to the danger arising from the use of swing-stagings, and that so they have no ground to complain because during the re-examination of the witness in behalf of the plaintiff he was examined upon that point.

It appeared that the second day before the breaking of the hook it was repaired by one Myers, the repairs consisting in cutting and mending. The plaintiff called Myers as a witness and the witness told how he mended the hook. Under the defendants' objection and exception he was then asked whether it could have been repaired in any other way by a blacksmith. His reply was "it could have been patched." Under objection and exception he testified to the characteristics of iron which is not good when it is heated and scarfed. His evidence tended to show that the hook in question had the characteristics of poor iron and that while the hook was at his shop and after he had mended it he informed the defendant, John, that the hook was made of poor iron and was unsafe. The exceptions state that the witness Myers was a competent blacksmith. So far as the exceptions show all the testimony of Myers was properly received. It was the testimony of a competent blacksmith tending to show that before the accident he had mended the hook in the only way it could be mended without patching, that he had discovered that it

was poor in quality, and that after he had mended it, but before it was taken from his shop, he notified one of the defendants that it was unsafe. His testimony about the ways in which the hook could be mended, in connection with all his testimony, had a bearing upon the condition in which the hook was.

The plaintiff's declaration alleged injuries to his legs, back and body, resulting in inability to labor. Physicians called by the plaintiff testified, under the defendant's objection and exception, to the condition of plaintiff's ankle at the time of the trial, as to the amount of stiffness that remained and, as experts, as to what effect the existing stiffness would have on the ability of the plaintiff to get about and work. The objection made to their testimony as to the condition of the plaintiff's ankle was solely that it was not admissible under the declaration. But the alleged injuries made this testimony admissible. It was not necessary to the admission of this evidence that the parts claimed to be injured should be described with anatomical nicety. The testimony as to the condition of the ankle at the time of the trial is presumed to have been connected with testimony as to the claimed injuries, since the bill of exceptions discloses nothing to the contrary, and since the objection was as is above stated. The objection to the testimony of the doctors as to what effect the existing stiffness would have on the plaintiff's ability to get around and work was that the subject-matter was not proper for expert evidence. But it would require an expert to tell the nature of the stiffness, the motions and actions that it would impede, if it would impede any, and the expert evidence was properly received. Whether such stiffness as was found resulted from muscular inflammation, from an injured tendon, from an impairment of the nerves of motion, or from voluntary control thereof by the plaintiff, or from some other cause, whether the rigidity was likely to be relieved or to be aggravated by exercise,

whether it was temporary or permanent in its nature, were all matters upon which the opinion of experts could properly be taken.    What the expert testimony in fact tended to show does not appear from the bill of exceptions.

The plaintiff called one Lewis Gingras, who testified that he had been a painter for many years, that he had made great use of swing-stagings in outside painting, that during the painting season eight or nine men employed by him had used such stagings and that he had used hooks made from one and one-eighth inch iron as well as others.    So far his testimony was of a qualifying character.    He then testified to the way in which such stagings were attached to a building, that a staging supported by iron hooks of the size named would hold eleven hundred to twelve hundred pounds more or less, that he would guarantee it to hold that much and that it would be safe to have on one end of such staging supported by one hook "two or three men at least and the stock."    Other painters testified to the same subject-matter.    All of this testimony of the painters was received subject to objection and exception on the part of the defendants.    We make no criticism here upon the use by Gingras of the word "guarantee."    The word was inapt, but the jury could have attached no technical meaning to it.    They must have understood it as a strong expression of opinion, and a majority of the Court think that the witness was properly testifying, not to the safety of swing-stagings in general, but merely to the normal strength of an iron hook of the diameter of the one which broke.    In this view the reception of the evidence of Gingras was not error.

The plaintiff called two of the three defendants, and these two testified that all three "were interested in the farm and farming, and were partners under the firm name of John Crane & Sons."    The defendants objected to this evidence on

the ground that the plaintiff was not entitled to inquire into the business relations of the defendants so long as he declined to elect whether he would proceed against them as individuals or as partners. To the reception of the evidence the defendants excepted. At another stage of the trial the defendants renewed their motion to have the plaintiff elect whether he would attempt to hold the defendants as individuals or as partners. The motion was overruled and the defendants excepted. In all that relates to this matter of election there was no error on the part of the court, and no more need be said in regard to that subject than is found in the opening part of this opinion.

The defendants called one Wood, a carpenter of long experience in putting up buildings, and asked him "whether swing-staging was safe and suitable for carpenter stagings for clapboarding a barn." This question was properly excluded. Counsel on both sides in argument before this Court take the position that the general safety of swing-stagings was a matter not properly in the case, and the charge of the court proceeded upon that ground. Besides the exceptions show no offer in connection with the question. *State* v. *Buck*, 74 Vt. 29, 51 Atl. 1087; *Fuller* v. *Valiquette*, 70 Vt. 502, 41 Atl. 579.

Subject to objection and exception by the defendants, evidence was introduced by the plaintiff tending to show his wages at times shortly before the occurrence of the injury in question. This evidence bore upon the question of damages and so was properly received.

The defendant, John, denied that the blacksmith, Myers, gave him the information testified to by Myers about the hook which broke. In this state of the testimony the defendants asked the said John this question: "What would you have done with this hook if Myers had told you that it was poor iron

and not safe?"  The question was excluded and its exclusion was proper.  The answer would have been mere conjecture.

The plaintiff claimed and his evidence tended to show that the defendant, Charles, supervised the work.  The defendants' evidence tended to show that Charles had had no experience as a carpenter except on this job, and that the plaintiff had charge of the work and that Charles worked under him.  As to George the exceptions recite that, "the evidence tended to show that the defendant, George Crane, had nothing to do with clapboarding or finishing the barn."  In this state of the evidence the plaintiff was allowed under the objection and exception of the defendants to introduce evidence tending to show that the questions which came up as to the inside arrangements of the barn, including the location of the stable, were determined by the defendants, Charles and George, and not by the plaintiff.  It is, in effect, claimed by the plaintiff that this evidence bore upon the question of who was actually overseeing the work of clapboarding which was in progress at the time of the accident.  But the evidence had no such bearing.  Assuming the fact to be that the defendants, Charles and George, determined the inside arrangements of their barn, such as the location of the stable and all that the phrase "inside arrangements" imports, this fact had nothing to do with the question of who was superintending the work of clapboarding at the time of the injury.  The admission of this evidence was error and neither from the bill of exceptions nor from the briefs of counsel are a majority of the Court led to suppose that the error was harmless.

The defendants called the wife of the defendant, John Crane, and offered to show by her several matters material to the case.  The offered evidence of Mrs. Crane was excluded, and the defendants excepted.  With reference to the rulings of the court, excluding the testimony of Mrs. Crane, the bill

of exceptions refers to the entire case and makes the transcript thereof controlling. An examination of the transcript shows that the correctness of these rulings could only be determined by a critical examination of shifting and apparently conflicting evidence given by the same witness and by a determination of the attitude which counsel took in regard to the matter of the testimony offered. The subject of her right to testify came up at various times and in various ways and under various claims and concessions on the part of counsel for the defendants. This being so, and a reversal being necessary and the law as to the competency of husband and wife as witnesses being now different from what it was when this case was tried, it is uncalled for and would be unprofitable to decide, and it is not decided, whether upon any point or in anybody's favor, Mrs. Crane should have been allowed to testify.

Exceptions to a few other rulings relating to evidence, and exceptions to the charge of the court, all of which depended for their correctness upon the view taken of the evidence, are not here reviewed, either because the court was so clearly right as to make discussion uninstructive and, therefore, superfluous, or because the exceptions relate to matters which in no likelihood would arise on another trial.

At the close of all the evidence the defendants made a motion to have a verdict directed in their favor. This motion was a renewal of a motion made at the close of the plaintiff's evidence, and was overruled, the defendants excepting. Several grounds for the motion were assigned; but since a verdict will not be directed if one count is good, and there is evidence to support it, the motion rested upon two grounds, assumption of risks by the plaintiff, and contributory negligence on his part. With reference to these grounds we have examined the entire case and we find the evidence to be so conflicting as to the conduct of the plaintiff, and as to what he knew and com-

prehended or ought to have known and comprehended about this defective hook, that the motion for a verdict was properly denied.

After the jury had retired a small model of the barn which had not been received as an exhibit, and a painter's staging hook which had been used in the examination of some witnesses but had not been offered or received as an exhibit, were discovered in the jury room. Immediately thereupon the court called the jury into the court room and admonished them but did not discharge them from the consideration of the case. The defendants excepted to the action of the court in not then discharging the jury. After the verdict was returned the defendants moved to set it aside because of the discovery of the model and hook in the jury room. The court then took testimony and found that the jury had agreed upon a verdict for the plaintiff before the model and hook got into their possession, and without considering the statements of jurymen that the model and hook did not influence them in assessing damages, found that the model and hook could not have influenced the jurymen in determining damages. Thereupon the motion to set aside the verdict was overruled and the defendants excepted. Everything that the court considered in making this finding is before us and we hold that the finding was fully warranted. The exception to the refusal to discharge the jury, and the exception to the refusal to set aside the verdict avail nothing.

*Judgment reversed and cause remanded.*