## CHEROKEE OCHRE COMPANY *v.* GEORGIA PERUVIAN OCHRE COMPANY; *el vice versa.*

HILL, J. 1. The defendants filed demurrers, general and special, to the original petition, which were sustained. On writ of error to this court, that judgment was reversed. Thereafter petitioners filed an ancillary petition, and the defendants again filed demurrers on numerous grounds. Substantially all of the grounds of the latter demurrer were included in the original demurrer, and are controlled by the ruling made when the case was formerly before this court. In some instances the language of the latter demurrer is identical with that of the former demurrer. In other instances the language is different, but the same question is raised. In still other instances, the grounds of the latter demurrer are so vague and indefinite as to present no question for determination. The latter demurrer is without merit, and the court did not err in overruling the same.

2. The court did not err in appointing an auditor. In equity cases the judge may, upon his own motion, when in his judgment the facts and circumstances of any such case require it, refer the same to an auditor. Civil Code (1910), § 5127.

3. The fourth ground of the amended motion for new trial amounts to an elaboration of the general grounds.

4. The fifth ground of the motion for new trial is without merit.

5. While in ground 6 of the motion for new trial movants complain that the charge permitted the jury to find against both parties, movant does not insist that the jury did so find. In order for the ground to have any merit it should show that movant was injured. The judge in the general charge instructed the jury that they might, under the evidence, find in favor of another land line than the one they did find as the true line.

6. The matter as set out in ground 7 was not requested, and besides it was not a proper charge, and the court did not err in failing to so charge.

7. Complaint is made of the judge's charge with reference to the Brooke line. The exception to this charge is without merit.

8. Ground 9 of the motion for new trial, which assigns error because of the failure of the court to charge with reference to the apportionment of acreage, is without merit.

9. Ground 13 of the motion for new trial complains of the following charge of the court: "Natural landmarks, being less liable to change, and not capable of counterfeit, shall be the most conclusive evidence; ancient or genuine landmarks, such as corner station or marked trees, shall control the course and distances called for by the survey. If the corners are established, and the lines not marked, a straight line, as required by the plat, shall be run." This charge is adjusted to the facts of the case, and

---

Appeal and Error, 3 C. J. p. 981, n. 74; 4 C. J. p. 1098, n. 2; p. 1213, n. 83.

Boundaries, 9 C. J. p. 212, n. 13; p. 213, n. 33, 37; p. 215, n. 41; p. 286, n. 92; p. 291, n. 22; p. 292, n. 32.

Equity, 21 C. J. p. 605, n. 5.

References, 34 Cyc. p. 794, n. 54, 55.

is in the language of the Civil Code of 1910, § 3820; and the exception is therefore without merit.

10. Grounds of the motion for new trial not specifically dealt with are without merit, or are covered by the rulings made on other assignments.

11. The verdict is authorized by the evidence.

*Judgment affirmed. Cross-bill dismissed. All the Justices concur.*

Nos. 5206, 5207. SEPTEMBER 11, 1926. REHEARING DENIED SEPTEMBER 29, 1926.

Equitable petition. Before Judge Tarver. Bartow superior court. September 19, 1925.

The Georgia Peruvian Ochre Company filed a petition in Bartow superior court against the Cherokee Ochre Company and Thompson, Weinman & Co. The petition as amended set forth substantially the following allegations: The plaintiff is the owner of the minerals upon land lot No. 531, and the Cherokee Ochre Company is the owner of the minerals upon land lot No. 478, the latter lot being adjacent to and immediately north of lot 531, and both being in the fourth district and third section of Bartow County. Thompson, Weinman & Co. hold a lease from the plaintiff, which gives them the right to extract the barytes ores from lot 531 at a royalty of $1 per ton. Thompson, Weinman & Co. also hold a lease from the Cherokee Ochre Company, which gives them the right to extract the barytes ores from lot 478 at a royalty of 35 cents per ton. A dispute has arisen between the plaintiff and the Cherokee Ochre Company as to the location of the line which separates the two lots. The plaintiff and the Cherokee Ochre Company employed separate surveyors to run the true line, the plaintiff's surveyor locating the line north of the line located by the surveyor employed by the Cherokee Ochre Company, the two lines being 54 feet apart on the east and 76 feet apart on the west side. The plaintiff contends for the northern and the Cherokee Ochre Company for the southern line as the true dividing line as the boundary between the two lots. The petition sets forth the bearings, monuments, and distances of the two lines, and these are also shown on the map made by plaintiff's surveyor, which is attached as an exhibit to the petition. Thompson, Weinman & Co. are extracting the ores from the disputed area. In the lease between the plaintiff and Thompson, Weinman & Co. it is provided that in the event any barytes is mined by the lessee near a boundary line of the leased premises, and a dispute arises with any adjacent landowner as to the location of such a line, the lessee shall furnish to

the lessor monthly reports of the barytes taken and shipped by them from the disputed area, and deposit the royalties thereon to the credit of the lessor in a named bank, "there to remain on deposit until it is determined to whom such royalties belong." In pursuance of this provision of their lease. Thompson, Weinman & Co. have deposited in a bank in Cartersville, to the credit of the plaintiff, the sum of $1,767, representing the royalties at the rate of $1 per ton on ore mined by Thompson, Weinman & Co. in the contested area to the date of the filing of the suit. This deposit, under the terms of the contract, is not subject to check by the plaintiff, but is to remain in bank "until it is determined to whom the same belongs." Plaintiff and the Cherokee Ochre Company have been unable to agree upon the ownership of this sum of money, because of their disagreement as to the location of the true dividing line between their respective lots. The interests of Thompson, Weinman & Co. are adverse to those of plaintiff, in that, if it should be determined by the court that the line contended for by the Cherokee Ochre Company is the true line, Thompson, Weinman & Co. will be called upon to pay to the Cherokee Ochre Company a royalty of only 35 cents per ton of barytes mined from the contested strip of land, instead of $1 per ton to the plaintiff, as stipulated in the separate leases held by Thompson, Weinman & Co. from the respective owners of the two lots.

The amendment to the petition merely alleges that the case is a proper one for decision by an auditor, and asks that an auditor be appointed and the case submitted to him. The prayers of the petition are: (1) for a decree establishing the line as contended by the plaintiff; (2) that plaintiff recover the sum of money on deposit with the Cartersville bank and all undeposited royalties that may have accrued on barytes mined by the lessees within the disputed area, and that plaintiff be declared to be entitled to the royalties on all barytes that may in the future be extracted from said area; (3) that an accounting be had from Thompson, Weinman & Co. as to all ores mined within the area up to the time of the trial; (4) that the court ascertain the true line, in the event it should be found that neither of those contended for is correct, and enter a decree accordingly; (5) in the event it should be ascertained that the true line is between the two disputed lines, that the court apportion the royalties between plaintiff and the Cherokee

Ochre Company in accordance with the quantities of barytes mined above or below the true line and within the area in question, that to this end Thompson, Weinman & Co. be ordered to account for the tonnage mined by them from the different parcels of the disputed tract, and that plaintiff recover from its lessee, at the stipulated rate, any undeposited royalties that may have accrued on barytes extracted south of the said intermediate line and within the said tract; (6) for general relief, and for process.

The defendants filed separate but identical demurrers, which were renewed, to the petition as amended. The court sustained each of the demurrers filed, and dismissed the petition. To this judgment the plaintiff excepted, and the judgment of the trial court was reversed, the Supreme Court holding that the petition set out a cause of action. *Georgia Peruvian Ochre Co.* v. *Cherokee Ochre. Co.,* 152 *Ga.* 150 (108 S. E. 609). When the case went back for trial, the plaintiff filed an ancillary petition praying for the appointment of an auditor. The defendants filed demurrers to the ancillary petition, substantially on the same grounds as the grounds of their demurrers to the original petition. The demurrers to the ancillary petition were overruled, and the court appointed an auditor to hear the case. Exceptions pendente lite were taken, and exception made thereon in the bill of exceptions to the judgment of the court in appointing an auditor. The defendants filed answers to the petition as amended, contending for a dividing line between the lots as established by their surveyor, and known as the Jacobs line; and by amendment averred that, if the true dividing line could not be definitely located, the acreage in dispute should be apportioned between the litigants. Plaintiff filed another amendment to its petition, alleging that the Brooke line, north of the Hall line (as claimed in the original petition), was the true original boundary line between the lots, and alleging in the alternative that, if said Brooke line was not the true and original boundary line, the Hall line was the true and original boundary line. The defendants filed their answer to this last amendment, averring that plaintiff was estopped from claiming that the Brooke line was the true and correct dividing line.

On July 6, 1923, the auditor filed his report finding in plaintiff's favor, and in favor of the Hall line as the true and correct dividing line between the properties in dispute, and finding in

favor of the plaintiff the sum of money deposited in the bank by Thompson, Weinman & Co. Thereafter defendants filed their exceptions of law and exceptions of fact to the auditor's report. The judge overruled the exceptions of law, approved the exceptions of fact, and entered an order submitting the issues of fact to a jury. Exceptions pendente lite were taken to the overruling of the exceptions of law. The case was submitted to a jury, which found in favor of the plaintiff, and against the exceptions of fact filed by the defendant, and in favor of the Hall line as contended for by plaintiff. Defendants made a motion for new trial on the general grounds and several amended grounds, which motion was overruled by the trial judge, and the defendants excepted.

*G. H. Aubrey* and *John T. Norris,* for Cherokee Ochre Co.
*Neel & Neel,* contra.

### ON MOTION FOR REHEARING.

PER CURIAM. The fifth ground of the motion for new trial complains that the court failed to charge that if the original boundary line between the two lots in controversy was lost and could not be located, in that event the jury could apportion the acreage between the two lots. A note by the court which is attached to the fourth ground of the motion for new trial is to the effect that movants requested the court, in writing, to charge that neither party has actual possession of the land in controversy, and that the line in controversy was the original line run in 1832. The auditor found the Hall line to be the line as originally surveyed in 1832; and also the jury, to whom was submitted this issue, so found. Movants do not contend that apportionment would apply unless the 1832 line was lost and could not be found; in which event apportionment would apply. Apportionment has no application, for the reason that there is no evidence upon which a charge upon apportionment could be based. Besides, there was no exception of fact to the auditor's finding, authorizing such a charge to the jury. The court can submit to the jury, and the jury can pass upon, only the exceptions filed to the auditor's report. Had the court submitted to the jury this question, as contended for by movants, it would have been beyond the scope of the exceptions to the auditor's report. See *McDonald* v. *Dabney,* 161 *Ga.* 711 (2, 3) (132 S. E. 547) ; *Harris* v. *Lumpkin,* 136 *Ga.* 47, 52 (70

S. E. 869) ; *Whitfield-Baker Co.* v. *Anderson,* 147 *Ga.* 242 (93 S. E. 406).