DAVIS *v.* GUFFEY.

No. 14690.  November 9, 1943.

*Gleason & Painter* and *Shaw & Shaw,* for plaintiff.

*Hale & Hale,* for defendant.

BELL, Chief Justice. ■ The first special ground of the mo-

tion for a new trial assigns error on the refusal of the court to give the following instruction to the jury, which was duly requested in writing: "Natural landmarks, being less liable to change, and not capable of counterfeit, shall be the most conclusive evidence; ancient or genuine landmarks, such as corner stations or marked trees, shall control the course and distances called for by the survey. If the corners are established and the lines not marked, a straight line, as required by the plat, shall be run, but an established marked line, though crooked, shall not be overruled; courses and distances shall be resorted to in the absence of higher evidence." While identical language is to be found in the Code, § 85-1601, the judge did not err in refusing to charge as thus requested. Even though the other portions of this charge might have been applicable, there was nothing in either the pleadings or the evidence to authorize a charge that "an established marked line, though crooked, shall not be overruled;" and since at least this part was inapplicable, it was not error to refuse the request in its entirety. *Hand* v. *Matthews,* 153 *Ga.* 75 (3) (111 S. E. 408); *Shoup* v. *Elliott,* 192 *Ga.* 858 (5) (16 S. E. 2d, 857); *Mayor &c. of Savannah* v. *Centennial Mill Co.,* 46 *Ga. App.* 725 (169 S. E. 40). The charge that was approved, as being adjusted to the facts, in *Cherokee Ochre Co.* v. *Georgia Peruvian Ochre Co.,* 162 *Ga.* 620 (9) (134 S. E. 616), did not contain the clause here quoted. Compare *Standard Oil Co.* v. *Altman,* 173 *Ga.* 777 (161 S. E. 353); *Kinsey* v. *Avans,* 196 *Ga.* 428 (3) (26 S. E. 2d, 787).

■ In ground 7 error was assigned on the following charge:

"So, gentlemen, the form of your verdict will be either 'We, the jury, find the original north line of lot 155 to be the line as surveyed by Pope Cole, . .' or 'We, the jury, find the true original north line of lot 155 to be the line as surveyed by Ernest Morrison, . .' or 'We, the jury, find the true original north line of lot 155 to be that which is marked by a fence constructed by Case between lots 144 and 155, and find the dividing line to be 31 rods south of that true original north line of lot 155.' So, gentlemen, the thing you need to determine, first thing, where is the north line. When you have got that, you have got the answer. Now, there is three lines that is contended; one is contended that the true original north line is what Pope Cole surveyed; and the other is the true original north line that was surveyed by Ernest Morrison;

and the other is that the Case fence is built on the original north line. So when you determine which is, or where is the north line, then the dividing line between Guffey and Davis is 31 rods south of the true north line." The movant contended "that this charge was incorrect and erroneous, for the reason that it submitted to the jury three lines, which the jury were by this charge instructed were contended to be the true original north line of lot 155, when as a matter of fact movant contended that the north line of the lot was the line as surveyed by Pope Cole, and the defendant contended that the true original north line of the lot was on the line where the Case fence was constructed. Ernest Morrison, as movant contends, was introduced by him for the sole purpose of establishing the fact that the Case fence was not on the original north line of the lot; and he made no contention during the trial of the case that Ernest Morrison had surveyed any original line. Movant contends that this charge as given tended to impress the jury with the fact that movant was contending for either of two surveyed lines as the original north line of lot 155, when as a matter of fact movant made no such contention, but insisted that the line as run by Pope Cole was the true original north line of lot 155."

There is no merit in this assignment. While the quoted instruction did state in effect that there were three lines that were "contended," it stated nothing as to what was contended by either party, and thus did not contain any misstatement as to the plaintiff's contentions. It is true there were only two parties, Davis as plaintiff and Guffey as defendant, and necessarily, therefore, if three lines were "contended," either the plaintiff or the defendant had to present alternative contentions; but this charge alone did not put the plaintiff in such attitude, being silent as to such matter, and so it does not appear upon its face to be erroneous as contended. A ground of a motion for a new trial must be complete within itself; and therefore, even though the judge may elsewhere have instructed the jury that the plaintiff relied upon two separate lines, such other charge, not having been mentioned anywhere in the exception, cannot be considered for the purpose of exposing error in the instruction complained of. "A ground of a motion for new trial should be complete in itself, and other parts of the record will not be looked to for the purpose of making the ground certain or definite." *Sims* v. *State,* 195 *Ga.* 485 (25 S. E. 2d, 1). See *Bryant* v. *State,*

180 *Ga.* 238 (178 S. E. 651) ; *Burden* v. *Gates,* 190 *Ga.* 300 (2) (9 S. E. 2d, 245).

■ After the judge had charged the jury, concluding with the sentence, "So when you determine which is or where is the north line, then the dividing line between Guffey and Davis is 31 rods south of the true north line," and after the jury had deliberated for some time, they requested additional instructions, when the following colloquy occurred between the judge and a juror:

Juror : "The difficulty in my mind is that your last instruction, under what you said, it might do. I can't agree with only that. May be I misunderstood you; you might go over that. I might clear it up in my mind." The court: "Well, the first question for you to determine is what or where is the original line, the north original line of lot 155." Juror: "What will constitute an original line, just what is an original line?" The court: "Since you have used that term, just what is an original line; the one which was surveyed off, making these land lots by numbers; where it is." Juror: "In the first survey, of the original survey?" The court: "Absolutely, that is right. That is the first question to determine; then when you determine where that is, then the dividing line between Guffey and Davis would be 31 rods south of wherever you locate that, find that." Juror: "Your honor, under the evidence, we say it is the oldest original line Uncle John Tinker said was run twenty years ago by Bud Morrison, run into this fence; the other survey was the one the boy run; and the last one Pope Cole run; we contend the first one, like you said."

In ground 8, movant contended "that this colloquy between a juror and the court was especially harmful and prejudicial to his rights, for the reason that it manifestly appears from the statement of the juror that it was in the minds of the jurors, or at least some of them, that of the three lines, about which there had been some evidence of surveys having been made, the oldest of these three lines would be controlling as the original north line of lot 155, irrespective of any evidence of original land marks, or other evidence of any other lines which had been surveyed being on the true original north line of the lot. Movant contends that the line referred to by the juror as having been run by Bud Morrison and testified about by Uncle John Tinker was not the original survey and did not necessarily locate the original north line of the lot; but the

unavoidable impression on the minds of the jurors, from the statements of the court in this colloquy, was that this line, being the first of the surveys testified about, was necessarily controlling as fixing the true north original line of the lot. Movant further contends that the verdict of the jury, as returned, definitely discloses that the jury arrived at this verdict on the theory that the line as surveyed by W. G. Morrison was controlling, since the court, in giving instructions to the jury as to the form of the verdict, made no reference to any form of verdict dealing with the line as surveyed by W. G. Morrison." This assignment of error does not show any erroneous statement by the judge, and does not complaint of any omission by him. No statement that he made was reasonably calculated to create an erroneous impression on the mind of the juror as to the meaning of the words "original line;" and for this reason there is no merit in the contention as to "unavoidable impression." While the concluding statement of the juror may have shown that he did as a matter of fact have an erroneous impression even after the judge's explanation, and in the circumstances it might have been the duty of the judge to attempt still further clarification, yet the mere fact that the juror remained confused did not within itself make the instruction erroneous; and there is no complaint that the judge failed or refused to give any further or additional instruction, or failed to do anything else that he might have done in the circumstances. Accordingly, this ground does not show any cause for reversal.

Special ground 2 was expressly abandoned in this court. The remaining grounds complained only of instructions that were given in an original charge, all of which was expressly withdrawn, and they were not repeated in the recharge. Hence there is no merit in these grounds. *Central of Georgia Railway Co.* v. *Garrison,* 12 *Ga. App.* 369 (6) (77 S. E. 193).

The judge did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*