GILREATH *v.* THE STATE.

1. In a prosecution for a criminal trespass under paragraph 2 of section 4440 of the code, it is necessary that the value of the articles taken and carried away should be averred in the indictment, and also that the same should be proved on the trial.
2. Where a fence, the joint property of adjacent landowners, is located on the dividing line between their respective premises, the unlawful removal of such fence by one of the proprietors or his agent, while a trespass for which a civil action will lie, is not an indictable trespass under the above cited section of the code.

May 15, 1895.

Indictment for trespass. Before Judge AKIN. City court of Cartersville. March term, 1895.

Holton Gilreath was tried upon an indictment charging that he and Caleb and Will Gilreath took and carried away certain rails, the property of A. M. Gaines, from his land without his consent. The Gilreath family and Gaines are adjacent landowners. A settlement road once divided their lands. The State's evidence showed, that in 1872 it was agreed between Gilreath and Glas-

gow, who then owned the Gaines place, that the fence
of each owner should be moved to the center of the
road on the original land-line dividing said farms, and
that this fence should be a joint fence, the agreed line
between the two farms, and the east half should be kept
up by the Gilreaths, and the west half from the creek by
Glasgow.   Moore and Gaines bought out Glasgow, and
subsequently Gaines succeeded to the ownership of the
whole farm.   The agreement as to the fence being the
dividing line and the contract as to keeping up the west
half thereof, was also made by Gilreath with Moore and
Gaines when they went into possession under Glasgow;
and Gaines had at different times repaired this fence.
The State's evidence further showed, that the fence was
on Gaines' land; that it was on the original land-line,
was the agreed line and acquiesced in by the adjacent
owners from 1872 to the time of the alleged trespass.
The evidence for the defendant was to the contrary.
It was conceded that the defendant took the rails from
said fence under direction from his parents, the owners
of the Gilreath land.   The evidence for defendant
showed, that when the fence was put up by the agreement,
it was not on the original land-line; that a survey made
by the county surveyor after the indictment showed the
fence to be over on the Gilreath side, according to the
original land-line; that no agreement was made with
Moore and Gaines or either of them, at any time, about
keeping up this fence, except for one year; that the
place from which the rails were taken had been often
repaired by defendant and his brothers since Gaines
owned the adjoining land, and on one occasion, after
the creek washed away a few panels of this fence, they
had rebuilt it; that at the time the rails were taken
away the defendant and the prosecutor Gaines lived in
a stock-law district; and that defendant went in the
daytime and tore the fence down and carried away the

rails, and that prosecutor notified him the rails were his and on his land, and not to move them.

The defendant requested the court to charge the jury, that unless the rails taken were shown to have been of some proved value, the jury must acquit; and so if the rails taken were the joint property of Gaines and the Gilreath family, and not the sole and exclusive property of Gaines, or if they were the common property of Gaines and Gilreath, or if they were not in the exclusive possession of Gaines but were on a common dividing line and were in the joint possession of Gaines and the Gilreath family. The court refused these requests, and charged to the contrary of them. Upon these grounds, and because the verdict was contrary to law and evidence, the defendant moved for a new trial, which was denied, and he excepted.

J. W. HARRIS, Jr., for plaintiff in error.
A. W. FITE, solicitor-general, contra.

ATKINSON, Justice.

1. To charge the commission of an indictable trespass, it is ordinarily not necessary to allege the value of the property injured or converted thereby. If the trespass itself amount to a larceny, then, as one of the constituents of that offense, it is essential that the value be alleged. If the animus furandi be wanting, however, and the taking merely wrongful, it is unnecessary to allege the value, unless that enters as an element in the definition of the offense. An illustration of this is furnished in the section of the code we now have under review, viz. section 4440. Paragraphs 1, 3 and 4 of that section prescribe that the several acts therein enumerated shall constitute an indictable trespass, without alleging the value of the article injured or the extent of the damage to the owner. Paragraph 2 of that section, while defining a trespass, creates in effect a species of

v 96-20

larceny, which is a kind of accession to the common law definition of that offense, and without constituting the taking and carrying away of the articles therein enumerated a specific larceny, denominates the taking and carrying away of such articles from the lands of another as an indictable trespass, requiring as a condition only that the articles should be of some value. We therefore reach the conclusion that the value is necessary to be stated and proven as one of the constituents of the offense. It is easy to imagine how timber, wood, rails, fruit, vegetables, corn and even cotton, the very articles enumerated, because of some peculiar condition or characteristic of the article, might be wholly without value to the owner and without any market value whatever; and the legislature did not intend to make that an indictable trespass which one might commit upon the land of another by detaching and carrying away therefrom these enumerated articles, unless they be of some such value as to injure the owner. In the definition itself of this offense a value is stated as one of its constituent elements.

2. As will be seen from the report, the defendant was indicted, jointly with certain other persons, for the offense of willfully taking and carrying away from the lands of the prosecutor certain rails, the property of the prosecutor, without the consent of the prosecutor. It appears that the prosecutor and the father of this defendant owned adjoining tracts of land; that they had agreed upon a dividing line between them, and upon this dividing line had constructed a rail-fence. This fence was the joint property of the parent of this defendant (by whose authority he removed the rails), and of the prosecutor. We think, in order to constitute an indictable trespass, the alleged owner of the property must have the absolute individual title thereto, or there must be some special title in him through and by which he is

authorized to hold the exclusive possession of the property. Each of these coterminous proprietors was entitled to the full and ample use of this joint property, and when one of them took and carried away a portion of it, it could not be ascertained legally that he took and carried away property other than his own, and therefore it cannot be said to have been taken and carried away without the consent of the owner. We think this case is controlled by the principle declared in *Padgett* v. *The State*, 81 *Ga.* 466; and while this defendant and his parent may be answerable civilly for any damage which may result to the prosecutor for a breach of covenant to maintain the joint fence, we do not think that the defendant was subject to indictment under this section of the code. This construction of statutes prohibiting trespasses of like character seems to have obtained in other States where similar laws prevail. Drees *v.* The State, 37 Ark. 122; Freeman on Cotenancy, section 97a.

The two propositions here ruled control the questions made in the court below, and it is unnecessary to consider any others which may occur in the record.

Let the judgment of the court below be    *Reversed.*