## 33873. LYONS v. BASSFORD.

BOWLES, Justice.

Lyons brought a complaint against Bassford alleging himself to be the owner of a particular tract of land described in a deed attached to his complaint. He claimed to have possessed this property since the 2nd day of December, 1946; that there was situated on said property a fence along the northernmost property line; that in prior years the defendant, who is the adjoining property owner on the north, persuaded plaintiff to allow him to install a new fence along the then existing property line and through joint effort this was done; and that defendant is threatening to tear down the fence, move the same and take possession of a portion of plaintiff's land. He alleged that he has livestock on his property and unless the defendant be restrained and enjoined from removing the fence his livestock will be permitted to roam at will, causing plaintiff harm and possibly damaging other lands and crops in the area. This plaintiff contended would cause him to suffer immediate and irreparable injury. He sought a restraining order, interlocutory injunction, permanent injunction and general relief.

Defendant filed an answer denying most of the pertinent parts of plaintiff's complaint. He also filed a counterclaim alleging that the fence in question was not located on the property line; was the property of the defendant; and that plaintiff had threatened employees of defendant in his efforts to remove said fence. He asked for a decree locating the exact property line between the parties and for a temporary and permanent injunction against the plaintiff from making verbal threats, gestures with firearms, or doing any other act designed to frighten or harass defendant or his employees in the process of removing the existing fence or relocating the same.

A pre-trial order was entered by the court and approved by counsel for both parties, setting forth their factual contentions and stipulating that the following issues of fact and law were applicable:

"1. The location of the original property line dividing the property of plaintiff and defendant;

"2. Whether the location of the existing fence is located on the original property line;

"3. Whether, if the location of the existing fence is not on the original property line, is it on a line on which a pre-existing fence was located for a period of 20 consecutive years or more during which period open and notorious possession was exercised by the plaintiff;

"4. Whether the plaintiff is entitled to injunctive relief;

"5. Whether the defendant is entitled to injunctive relief;

"6. The location of the true and legal property line between the property owned by the plaintiff and the property owned by the defendant;

"7. Whether establishment of existing fence can constitute establishment or binder line by agreement."

This order approved by the parties and the court was filed with the pleadings in the case.

At trial, plaintiff offered testimony and documents which if believed by the jury would show that plaintiff bought his property on the 2nd day of December, 1946, and his deed was duly recorded at that time. When he bought the property it was fenced on four sides. He immediately took possession and lived in a house on the property for nine months. He then moved his mother and father on the property and they lived there for many years until they died. He then moved his sister and brother on the property and they lived there until 1972. At that time plaintiff returned to the property and has personally occupied the same since then. At the time the property was bought, the land on the north was owned by one Broadfield and there was a fence in place from street to street separating plaintiff's property from the Broadfield property. It was a line fence. During the whole of his possession the plaintiff and those possessing under him maintained hogs and cattle on the property at all times. There was a pecan grove on the property, and plaintiff's father and brother both farmed the land. He also patched the disputed fence during this possession. Several years ago the original fence was removed by the defendant and the present fence was put back at the same location.

Plaintiff furnished part of the labor or expense of labor for replacing the fence. Plaintiff introduced a letter from defendant's counsel saying he was going to take the fence down and defendant's pleadings admit this intention.

Defendant introduced evidence that the current fence was not at the same location as the former fence. The defendant was evasive about authorizing anyone to agree with plaintiff about the relocation of the old fence. He also offered testimony by a witness who did survey work but who was not a licensed surveyor, that he had measured plaintiff's property and that the dimensions of the two sides called for in plaintiff's deed were nine feet short of the new fence on one side and 7.4 feet short on the other side. On cross examination he admitted that he did not consider the location of the old fence or the new fence in locating the north line to plaintiff's property but merely used the mathematical footages in plaintiff's deed.

Upon completion of the evidence, both parties made motions for directed verdicts. The court denied plaintiff's motion but granted the motion of the defendant, withdrew the issues from the jury and entered judgment accordingly. The court concluded that the plaintiff had failed to introduce evidence sufficient to present a jury question as to whether, under the laws relating to prescription, agreement, or any other legal principle, plaintiff's northerly line had been changed from the northerly line described in the warranty deed introduced into evidence. The court concluded factually that plaintiff's deed described his northerly boundary as running from a point on the easterly margin of Stanley Street (which is located 731 feet northerly from the southerly line of Land Lot No. 30, as measured along the easterly margin of Stanley Street) to a point on the westerly margin of Myddleton Avenue (which is located 37 feet northerly from the northerly margin of Valdosta-Clyattville Road as measured along the westerly margin of Myddleton Avenue).

The court denied plaintiff's prayers for injunction, enjoined him from threatening defendant, and decreed that the northerly property line of plaintiff's property is the same northerly line described in the deed from Fred and Maude L. Swan to the plaintiff dated December 2,

1946; the northwesterly end of said line being located 731 feet northerly from the southerly line of Land Lot No. 30 (as measured along the easterly margin of Stanley Street and the northeasterly end of said line being located 37 feet northerly from the northerly margin of Valdosta-Clyattville Road as measured along the westerly margin of Myddleton Avenue).

Plaintiff appeals to this court.

We reverse.

1. Although the trial judge's order does not recite the underlying basis for his rulings, it appears that he concluded as a matter of law that the location of plaintiff's north line was controlled by the footage measurements contained in his deed. So far as pertinent here the deed reads: ". . . Commencing at that certain point on the South Line of said Lot No. 30 where said line intersects the Eastern border of the old Troupeville and Bellville public road, and running in a Northerly direction along the East side of said old Troupeville and Bellville Road (now known as Stanley Street), a distance of 731 feet *to a corner and fence separating land owned by Broadfield, thence in an Easterly direction along said line fence* a distance of 1098 feet to Myddleton Avenue, thence, in a Southerly direction along the West margin of said Myddleton Avenue a distance of 37 feet to the old Clyattville and Valdosta Public Road, . . ." (Emphasis supplied.) The deed description recites measured distances to help establish the termini of plaintiff's north line. These termini, however, and indeed the entire course of his north line, are designated by an artificial object which is set forth in the deed as "line fence separating land owned by Broadfield."

Justice Lumpkin in *Riley v. Griffin,* 16 Ga. 141 (1854) laid down 14 rules regarding the construction of descriptions, which are still the law today, but all of which are not pertinent to the case at hand. That decision holds in part: "(6) Where the calls of a deed or other instrument, are for natural, as well as known artificial objects, both courses and distances, when inconsistent, must be disregarded. And this rule is supposed to prevail in most of the States in this Union. . .

"(11) Courses and distances occupy the lowest,

instead of the highest grade, in the scale of evidence, as to the identification of land...

"(15) Whenever, in a conveyance, the deed refers to monuments, actually erected as the boundaries of the land, it is well settled that these monuments must prevail, whatever mistakes the deed may contain, as to courses and distances.

"(16) Courses and distances are pointers and guides, rather to ascertain the natural objects of boundaries."

See also Pindar, Georgia Real Estate Law, § 19-155.

Monuments have been defined as permanent landmarks established for the purpose of indicating boundaries. *Thompson v. Hill,* 137 Ga. 308, 313 (73 SE 640) (1911). Artificial boundaries as applied to this case include fences, roads, streets, and land lot lines. They are evidence of the points which land owners, past or present, had in mind in their contractual dealings with one another. Pindar, Georgia Real Estate Law, § 13-4. All monuments, whether natural or artificial are deemed superior to courses and distances. *Cherokee Ochre Co. v. Ga. Peruvian Ochre Co.,* 162 Ga. 620 (134 SE 616) (1926). Also see *Brantly v. Huff,* 62 Ga. 532, 536 (1879). The superiority of monuments over metes and bounds is limited to those which are referred to in the deed itself. Therefore, the location of the boundary fence called for by plaintiff's deed on the north side, separating his land from the land formerly owned by Broadfield, and now defendant, would be the true line called for by plaintiff's deed. This monument prevails over the distances called for in the deed, whether overstated or understated. Perhaps this is better illustrated where the deed says the north line measures 1,098 feet from Stanley Street to Myddleton Avenue. All readily agree the line runs from street to street irrespective of the footage recited in the deed. The fence is no less an artificial monument than the streets.

Plaintiff introduced evidence that the latest fence was located in the same place as the original fence. Although this was disputed by the defendant, the issue should have been submitted to a jury.

2. An examination of the pre-trial order setting forth the contentions of the parties and the fact and law

questions indicates that neither the issue of title supporting plaintiff's complaint, nor the issue of title that would support defendant's counterclaim were real issues in the case. The only reference to title made in the pre-trial order is an "iffy" one which is set out as number 3 above. The parties stipulated in the order, "That the exact location of the land line is initialed [sic] for the jury." Assuming, arguendo, that the question of plaintiff's title remained an issue in the case, it appears that although his proof may not be all that is desired in such a case, it did meet minimum requirements affording him a jury trial. His evidence, if believed by a jury, would support his contentions that he bought the land in 1946, paid for it, received a deed including an adequate legal description, recorded the deed, entered possession immediately; that the entire tract at that time was enclosed by a fence; and his possession was evidenced by occupying a house on the premises either by himself or members of his immediate family for the entire period from the year 1946 through the date of trial in 1978. There was no complaint about his possession and no dispute about the location of his property lines. The possession was further evidenced by maintaining livestock on the premises, within the enclosure, each and every year, and by cultivation. The land possessed was that described in his deed, and his possession extended to the fence itself. This evidence makes out a prima facie case, sufficient to shift the burden to the opposite party, to show by way of defense some defect or disability preventing plaintiff's title from ripening by prescription.

The plaintiff having shown that he went into possession of the premises following purchase of the same, it will be presumed that he did so in good faith until the contrary is shown. *Evans v. Baird*, 44 Ga. 645 (1872). There was some evidence that the plaintiff occupied the entire fenced premises from the date of his purchase until the date the suit was filed. Thus the entire period was accounted for. *Elliott v. Robinson*, 198 Ga. 811 (33 SE2d 95) (1945). There was evidence that the entire area was fenced which is acceptable evidence of actual possession. Code Ann. § 85-403.

3. Where land is bounded in a deed by the land of an

adjacent owner, and where such boundary of the adjacent owner is undefined, there can be no prescription under the deed, as against such owner, farther than the actual possession of the grantee in the deed extends. *Quarterman v. Perry,* 190 Ga. 275 (3) (9 SE2d 61) (1940). On the other hand, where the deed provides that the land is bounded by an adjacent owner, and designates that boundary as the line of an existing fence, and the deed owner actually occupies the land up to the fence, where other requirements are met, he may obtain title by prescription up to the fence which is the limit of his possession. Although there was evidence in this case to show actual possession up to the boundary line fence, there was also evidence of constructive possession of the entire tract of land. Where there is actual possession under a deed of only a part (the home house), the law construes the possession to extend to the boundary of the tract. Code Ann. § 85-404. Evidence to the contrary in this case, was at best, only conflicting.

4. Appellee contends that the plaintiff has failed to show that the party or-parties against whom he claims a prescriptive title were not under any disability during the period of his possession. He cites no case law in support of his position.

When a party has shown prescription prima facie and the opposite party relies on a disability or an exception to defeat it, the person asserting the disability or exception has the burden of proof as to that. *Arnold v. Limeburger,* 122 Ga. 72 (10) (49 SE 812) (1904); *Cushman v. Coleman,* 92 Ga. 772, 778 (19 SE 46) (1893). Powell, Actions for Land (Rev. Ed.), § 342. This is a rule of necessity. The party in bona fide possession who holds against the world may not know and may have no means of determining the identity of every adverse claimant. For instance, if an adverse party suffered from periods of insanity, and at the same time enjoyed lucid intervals, it would be unreasonable if not impossible to require the plaintiff to prove his prescription by identifying and tacking all the lucid intervals necessary to make out a prescriptive period. The defendant has neither urged nor proven any disability in this case.

5. The burden of proof is on the plaintiff to establish

that he is entitled to recover the land for which he sues, or some definite part of it. *Addison v. Edwards,* 138 Ga. 623 (1) (75 SE 648) (1912). But when the plaintiff has made out his prima facie case the burden shifts to the defendant. *Rountree v. Green,* 164 Ga. 665 (2) (139 SE 335) (1927).

6. It was defendant's admitted intention to take the fence down. Although ordinarily the removal of a fence may be compensable in monetary damages, and the amount of damages may be readily ascertainable, where there is evidence that the fence is located on the boundary line, is the *only remaining evidence of the location of that line,* and the removal of the fence would break plaintiff's enclosure and allow his livestock to escape, he does have a right to seek relief by way of injunction to prevent its destruction. See *Miller v. Stewart,* 202 Ga. 127 (2) (42 SE2d 445) (1947). See *Downing v. Anderson,* 126 Ga. 373 (55 SE 184) (1906).

7. A fence located on the exact boundary line between coterminous owners gives to each a property right therein. It would not be correct to say that the parties are tenants in common in and to the fence itself, because strictly speaking, each merely owns one-half of the fence up to the theoretical perpendicular center line of the fence. But as a practical matter, there is no such thing as "half a fence" and with that each of the coterminous owners would have an easement and a property right in the one-half of the other, similar to rights owned in a party wall. General equitable principles and rules are applicable concerning the protection of rights and interests in party walls. Thus, in a proper case, an injunction may be granted to prevent the unauthorized destruction of or damage to a party wall. 1 EGL 301, Adjoining Landowners, § 26. By analogy, protection of rights and interests in boundary line fences may be protected in like manner. It would violate elementary equitable principles to permit one coterminous land owner to completely obliterate from the face of the earth an existing boundary line fence, to replace the same with a new fence at the identical location, and after the applicable statute of limitations has run, for any trespass that he may have caused, to claim that he owns the entire fence and can take it down if he chooses. See *Gilreath v.*

*State,* 96 Ga. 303 (22 SE 907) (1895).

8. Code Ann. § 105-1403 provides, "The bare possession of land shall authorize the possessor to recover damages from any person who shall wrongfully, in any manner, interfere with such possession."

"In order to maintain an action for trespass upon realty it is essential that the plaintiff show either that he has title to the land, or that he was in possession thereof at the time of the alleged trespass. *James v. Riley,* 181 Ga. 454 (2) (182 SE 604) [1935]. One who is bona fide in possession of land under claim of ownership may, upon proof of such possession, and such circumstances as would render the issuance of the writ of injunction necessary and proper, maintain an action to enjoin interference with his possession. *Downing v. Anderson,* 126 Ga. 373 (55 SE 184) [1906]." *Moss v. Thompson Co.,* 212 Ga. 184 (2) (91 SE2d 485) (1956). Also see *Wimpy v. Gilreath,* 241 Ga. 18 (243 SE2d 77) (1978).

The trial court erred in granting Bassford's motion for a directed verdict and in not submitting the factual issues to a jury.

*Judgment reversed. All the Justices concur.*

ARGUED SEPTEMBER 12, 1978 — DECIDED OCTOBER 31, 1978.

*Bennett, Wisenbaker & Bennett, Michael S. Bennett, Reginald C. Wisenbaker,* for appellant.

*John McTier,* for appellee.