## A97A0474. MARTIN v. PATTON.
(483 SE2d 614)

ELDRIDGE, Judge.

This is an appeal from a jury verdict to quiet title involving coterminous landowners; the titles to the two parcels of land came from common grantors, the Lloyd Cleveland Estate and Byrd Patton. The land at issue lies in Land Lots 76 and 77 of the Fourth Land District, originally Henry County, now Spalding County, Georgia, and was surveyed in June 1931 by N. S. Westbrook, Civil Engineer. The survey plat was recorded in Plat Book 2, page 217, of the Spalding Superior Court records. The original 1931 survey of the tract of land by Westbrook gave courses and distances for the perimeter but did not survey the land lot line between Land Lots 76 and 77. On the 1931 survey, the land lot line is shown as a broken line which divided the larger parcel from the smaller parcel as a matter of convenience for the original grantor; the larger parcel (Lot 76) showed on the plat as having "83 25/100 ±" acres, and the smaller parcel (Lot 77) showed on the plat as having "59 85/100 ±" acres.

On April 6, 1951, Byrd Patton conveyed to Ralph E. Patton, appellee's husband, for love and affection, the smaller tract lying in Land Lot 77, which purported to contain 55.85 acres "more or less" and which was the rest and remainder of the parcel of land in Land Lot 77; the legal description stated the acreage in specific terms as containing 59.85 acres, less four acres previously conveyed. Appellee, Velma Louise Helms Patton, acquired the land by virtue of a deed of assent, dated September 2, 1982, and which was essentially the same as the legal description contained in the deed to her husband. The legal description read 55.85 acres of land "more or less" and "all that tract or parcel of land lying and being in Land Lot 77." The deed of her deceased husband had a slightly different description as being in the southwest corner of Land Lot 77, in the Fourth District of originally Henry County, now Spalding County, Georgia, as shown on plat of survey of the Lloyd Cleveland Estate, recorded in Plat Book No. Two, page 217, in the Clerk of Spalding County Superior Court; less four acres in the southeast corner, heretofore sold to R. C. Rogers; "said property is bounded to the North by Tom Moore Estate,

East by Public Road and land of R. C. Rogers; South by Public, Road, and land of H. H. Thompson; and west by land lot number Seventy-Six (76)."

In January 1942, L. P. Goodrich, Administrator of the Estate of Alan M. Cleveland, sold at public sale to Byrd Patton the land described in the deed as "Eighty three and twenty-five hundredths (83.25) acres in Lot Seventy-six (76), and fifty nine and eighty-five (59.85) acres in lot seventy seven (77), in the Fourth District of original Henry now Union District of Spalding County, Georgia, bounded on the East by public road and the lands of Grady Parker and G. G. Aiken; on the South by public road and the lands of John Calhoun and Wesley; on the West by a creek and the lands of Tom Moore; and on the North by the lands of Tom Moore, as shown by plat and survey recorded in the Clerk's office of said County in Plat Book No. 2, page 217." This legal description contained no metes and bounds. This deed begins with specific acreage instead of the usual language "all that tract and parcel of land lying and being" which indicates that the intent of the grantor was to convey the land by acreage instead of tract. See *Roberts v. Groover*, 156 Ga. 386, 387 (2) (119 SE 696) (1923). The deed to Velma Louise Helms Patton, however, was not a specific acreage deed but a deed for a tract, because it used both the language "more or less" after the acreage and the language "all that tract or parcel of land lying in Land Lot 77."

Appellant, Ruth G. Martin, acquired title to the larger parcel of land in Land Lot 76 by warranty deed from Josiah Arnold Patton, dated December 26, 1952, which conveyed the larger parcel that purportedly contained 83.25 acres. The legal description gave no metes and bounds; it described the parcel specifically as 83.25 acres of land in the Southeast corner of Land Lot 76 in the Fourth Land District of originally Henry County, now Spalding County, Georgia, as shown on Plat of Survey of the Lloyd Cleveland Estate and recorded in Plat Book No. Two, page 217 in the office of the Clerk of the Superior Court of Spalding County, Georgia, and bounded on the north by Tom Moore Estate; east by Land Lot 77; south by Land Lot 53; and west by lands of the Tom Moore Estate and John Calhoun; "[t]his deed conveys the same real property as that which was conveyed by Mrs. Johnnie Lee (Mrs. Byrd) Patton to Josiah Arnold Patton by warranty deed dated April 6, 1951."

All of appellant's land lies exclusively in Land Lot 76, and all of appellee's land lies exclusively in Land Lot 77. Appellant's eastern boundary line is appellee's western boundary line; such boundary line is the land lot line between Land Lots 76 and 77.

In 1955, appellant hired the original surveyor, N. S. Westbrook, to survey the land lot line between Land Lots 76 and 77 which formed the common property line between the two tracts of land.

Westbrook completed the survey on March 10, 1955. The bill for the survey stated that Westbrook had established "lines and corners to property purchased from Mr. and Mrs. Byrd Patton, being 10 acres of Old Goodin homeplace and all of Old Cleveland Place located in Land Lot 76 — marking lines with iron stakes and corners with conc. monuments — computing acreages and making plat and prints of entire property owned by Mrs. Martin."

After the boundary line had been marked by iron stakes by Westbrook, appellee's husband erected a fence on the line. The fence remained in good repair on the date of the survey by Robert S. Mitchell in 1994.

After appellee's husband died in 1982, Warren L. Storey, Jr. surveyed appellee's land, which survey was dated August 20, 1982. The Storey survey showed appellee's west line and appellant's east line and the land lot line between Land Lots 76 and 77 as being 129 feet west of the line established by the 1955 Westbrook survey.

Appellant had a survey done of the location of the land lot line between Land Lots 76 and 77, which was completed on July 19, 1994. Such plat showed what, in Mitchell's opinion, were three lines: the location of the land lot line between Land Lots 76 and 77 based upon land lots north and south and which was the easternmost line; the 1955 Westbrook line along which the fence ran and which lay in the middle line; and the 1982 Storey line, which was the westernmost line on the 1994 Mitchell plat.

Appellant brought suit to quiet title to the area in dispute. The jury had all three lines from which to decide, and they chose the 1982 Storey line which was the westernmost line on the 1994 Mitchell plat.

Storey at trial testified without objection that, in his opinion, since the deeds contained no metes and bounds, although they had physical boundaries, either natural, man-made, or other ownership, the method to determine the location of the dividing line between the two parcels was to calculate the exact acreage conveyed which would establish such dividing line, notwithstanding that such dividing line was described as the land lot line between Land Lots 76 and 77. Although the 1931 survey by Westbrook shows the acreage as more or less the stated figures by use of the symbols "+" over a "–," Storey testified, without objection, that the acreage in each land lot was exactly 59.85 and 83.25 acres, which was the amount shown in the deeds. Storey admitted on cross-examination that Westbrook's survey in 1955 was an actual survey to determine the location of the land lot line between Land Lots 76 and 77. Storey also admitted on cross-examination that the dividing line established by him was not the land lot line and that the 1955 survey by Westbrook and the 1994 survey by Mitchell established the land lot line.

Appellant did not move for a directed verdict, object to Storey's testimony, or object to the charge of the court. The form verdict was drawn up by counsel without any objection, and the jury had all three lines from which to choose; they chose the 1982 Storey line. On March 1, 1996, the trial court entered a decree based upon the jury verdict pursuant to OCGA § 23-3-67. The motion for new trial was a general form motion. The motion for new trial was denied. The notice of appeal was filed on September 23, 1996, and was from the judgment entered on March 1, 1996; the motion for new trial was denied on August 30, 1996.

Appellant brought a petition to quiet title. Appellee answered and counterclaimed for trespass. By pre-trial the parties agreed to submit the issue to a jury. Counsel also agreed to the form of the verdict. On March 1, 1996, the trial court entered a decree based upon the jury verdict pursuant to OCGA § 23-3-67.

1. Appellant's first enumeration of error is that the jury erred in failing to establish the dividing line between the parties as the land lot line and, thus, the boundary line surveyed in 1955 by appellant, acquiesced in by appellee by erecting a fence on said line in 1956 and which line was undisputed until 1982 or later.

While appellee's husband may have erected a fence along the survey line established by the 1955 Westbrook survey, there is a conflict in the evidence as to why this was done and what, if anything, such fence signifies. A fence placed upon a person's own land, although near the boundary line, does not establish an agreement to a boundary line. *Carter v. Becton*, 250 Ga. 617 (300 SE2d 152) (1983); *David v. Crane*, 240 Ga. 671 (242 SE2d 131) (1978); *Bennett v. Perry*, 207 Ga. 331 (61 SE2d 501) (1950); *Dixon v. Dixon*, 97 Ga. App. 54 (102 SE2d 74) (1958). The question of intention in erecting and maintaining a fence is a question for the jury. *Frost v. Williamson*, 239 Ga. 266 (236 SE2d 615) (1977); *Cothran v. Burk*, 234 Ga. 460 (216 SE2d 319) (1975); *Dixon v. Dixon*, supra. While the jury could find from the existence of a fence at the location that this was an agreed-upon boundary, such factual determination was for the jury. *Meeks v. Futch*, 251 Ga. 82 (303 SE2d 277) (1983); *Lyons v. Bassford*, 242 Ga. 466 (249 SE2d 255) (1978); *Shipp v. Rakestraw*, 241 Ga. 8 (243 SE2d 52) (1978); *Campbell v. Savage*, 237 Ga. 578 (229 SE2d 474) (1976).

Upon disputed evidence, the jury found for appellee on this issue. Under the "any evidence" standard of review, it cannot be said that there was insufficient evidence to support the jury's decision regarding the fence line. *Southern Gen. Ins. Co. v. Holt*, 262 Ga. 267 (416 SE2d 274) (1992); *Re/Max of Ga. v. Real Estate Group &c.*, 201 Ga. App. 787, 788 (412 SE2d 543) (1991). We find no error on this enumeration of error.

2. Appellant's second enumeration of error is that the trial court

erred, as a matter of law, in not finding that the location of a land lot line takes precedence over acreage cited in deeds of coterminous landowners when both deeds cite the land lot line as the common boundary of the properties. We agree.

An action to quiet title is an equitable action under OCGA § 23-3-60 et seq.; however, either party may demand a trial by jury under OCGA § 23-3-66. A decree was entered by the trial court pursuant to OCGA § 23-3-67, and appellant appealed from such judgment. While the jury returns an advisory verdict as to disputed issues of fact, the trial court in equity must enter a proper decree based upon the law and facts, just as must be done when a special master hears the issues of law and fact. See *Capers v. Camp*, 244 Ga. 7, 12 (4) (257 SE2d 517) (1979); *Brown v. Wilson*, 240 Ga. 856, 857 (1) (242 SE2d 603) (1978); *Higdon v. Gates*, 238 Ga. 105, 106 (231 SE2d 345) (1976); *Thornton v. Reb Properties*, 237 Ga. 59 (226 SE2d 741) (1976). If the verdict is in error, like a special master's award, then the trial court should set it aside. See *Capers v. Camp*, supra at 12; see also *Addison v. Reece*, 263 Ga. 631, 632 (1) (436 SE2d 663) (1993).

The case sub judice is a boundary line dispute between two coterminous grantees from a common grantor, and each deed used the land lot line of Land Lots 76 and 77 as the east/west boundary of each tract of land; further, neither deed purported to convey land that lay outside the specific land lot in which the conveyed tract lay. Thus, to cross the land lot line separating the two tracts would convey nothing and be contrary to the specific legal descriptions. While each deed did not convey by metes and bounds, each deed made reference to physical boundaries (either man-made or natural), the 1931 recorded plat, and the land lot line. While Storey gave his opinion that the westernmost line was the dividing line between the two tracts of land because the deeds conveyed specific quantities of acreage and the 1931 Westbrook survey plat was accurate in showing such acreage, Storey erroneously ignored the 1931 plat which gave the "+" and "−" symbols for more or less acreage. In doing so, Storey invaded the province of the trial court in stating the legal conclusion that the dividing line could be determined based upon the acreage even though it crossed the actual land lot line between Land Lots 76 and 77, and by stating that appellee's deed was not a specific acreage conveyance but a tract conveyance which used the phrases "more or less" and "tract and parcel of land lying in Land Lot 77." Storey agreed that there was no factual dispute that the land lot line had been correctly located by the 1955 Westbrook survey and the 1994 Mitchell survey. Since there existed no factual dispute as to where the land lot line between Land Lots 76 and 77 lay, then there was no factual dispute for the jury to decide. It was for the trial court to determine, as a matter of law, that: the dividing line could not be

located in the fashion used by Storey; that there existed no dispute as to fact as to the location of the land lot line between Land Lots 76 and 77 on the ground; and that, as a matter of law when legal descriptions gave the land lot line as a boundary, such location of the land lot line controlled over acreage.

Justice Lumpkin, in *Riley v. Griffin*, 16 Ga. 141, 147-148 (1854), set forth the criteria by which legal descriptions are interpreted and governed. "1. Where the calls of a deed are for natural as well as known artificial objects, both courses and distances, when inconsistent, must be disregarded." Pindar, Ga. Real Estate Law & Procedure (4th ed. 1993), § 19-155, citing *Riley v. Griffin*, supra at 147. "Artificial boundaries as applied to this case include fences, roads, streets, and land lot lines. They are evidence of the points which land owners, past and present, had in mind in their contractual dealings with one another. Pindar, Georgia Real Estate Law, § 13-4." *Lyons v. Bassford*, supra at 470. "2. Whenever a natural boundary is called for in a deed, the line is to determine at it: however wide of the course called for it may be, or however short, or beyond the distance specified. 3. Whenever it can be proved that there was a line actually run by the surveyor, or was marked, and a corner made, the party claiming under the grant or deed shall hold accordingly, notwithstanding a mistaken description of the land in the grant or deed. 4. When the lines or courses of an adjoining tract are called for in a deed or grant, the lines shall be extended to them, without regard to distances, provided these lines and courses be sufficiently established. 5. When there are no natural boundaries called for, no marked trees or courses to be found, nor the places where they once stood ascertained and identified by evidence; or where no lines or courses of an adjacent tract are called for, in all such cases, courts are of necessity confined to the courses and distances described in the grant or deed. 6. Courses and distances occupy the lowest, instead of the highest, grade in the scale of evidence, as to identification of land. 7. Any natural object, and the more prominent and permanent the object, the more controlling as a locator, when distinctly called for and satisfactorily proved, becomes a landmark not to be rejected, because the certainty which it affords excludes the probability of mistake. 8. Courses and distances, depending for their correctness on a great variety of circumstances, are constantly liable to be incorrect; difference in the instrument used and in the care of surveyors and their assistants leads to different results. 9. In ascertaining boundaries, the locations of the original surveyor, so far as they can be found, are to be resorted to; and where they vary from the proprietor's plan, the locations actually made will control the plan. 10. Whenever, in a conveyance, the deed refers to monuments actually erected as the boundaries of the land, it is well settled that these monuments must prevail,

whatever mistakes the deed may contain, as to courses and distances. 11. Courses and distances are pointers and guides, rather to ascertain the natural objects of boundaries. 12. Where a given line is exceeded in a grant, according to the courses and distances, evidence may be given of long occupation under it, to prove the boundaries. 13. Boundaries and courses may be proved by hearsay, from the actual necessity of the case. 14. Where a line has been run and agreed on by the coterminous proprietors, and acquiesced in and possession held to it for eighteen or twenty years, the parties and those claiming under them are bound by it, no matter when, nor by whom, the line was run." Pindar, supra; *Lyons v. Bassford*, supra at 469-470.

"What is most material and most certain in a description shall prevail over that which is less material and less certain. Thus courses and distances yield to natural, visible, and ascertained objects. Accordingly, when in the description of land in a deed known monuments are referred to as boundaries, they must usually govern, although neither courses nor distances nor the computed contents correspond therewith. Natural monuments have greater weight than artificial ones. Where all other means of ascertaining the true construction of a deed fails, and a doubt still remains, that construction is rather to be preferred which is most favorable to the grantee. [Cits.] . . . On the other hand, where land had been laid off by a government survey into land lots, and a deed conveyed several of the land lots by number (except fifty acres in the southeast corner of one of them), and added, 'known as the Wooldridge plantation,' those words were treated as matter of further description, and not as limiting the land granted, though the lots named covered more than the 'Wooldridge plantation.' [Cit.] Where a deed conveys a lot of land expressly with reference to a plat, the courses, distances, and monuments appearing on the plat are to be considered in ascertaining the description of the land and the intent of the parties as if they had been expressly enumerated in the deed. [Cits.] Where a lot is conveyed according to its number in a certain plan or plat, so that it is evident that the important thing under consideration in the grant is the particular lot, and there is super-added to this a description which does not include the entire lot, it has been held that the erroneous description will yield to the conveyance by number; and it has also been said that this would be true whether the number immediately preceded the description or vice versa, if it were evident from the deed that the lot known by number was the important or certain thing in the conveyance." *Thompson v. Hill*, 137 Ga. 308, 311-312 (1) (73 SE 640) (1912); see also *Harris v. Hull*, 70 Ga. 831, 838-841 (1) (1883); OCGA § 44-4-5.

Pindar states, "In the construction of a deed to determine the intended boundaries, the statement of acreage is perhaps the least

helpful of all the elements involved. Thus, where there is a definite metes and bounds description, a statement of area will not reduce or enlarge the tract conveyed." (Footnote omitted.) Pindar, supra at § 19-156; see *McCook v. Council*, 202 Ga. 313 (43 SE2d 317) (1947); *McDonald v. Taylor*, 200 Ga. 445, 449 (37 SE2d 336) (1946). Cadle, Ga. Land Surveying History & Law, p. 421, states "[a]rea is usually considered the lowest indicia as to the location of land and the last to be resorted to." "In the description of land it is usual, after the description by metes and bounds or subdivisions, to add a clause stating that the land described contains so many acres. But unless there is an express covenant that there is the quantity of land mentioned, the clause as to quantity is considered simply as a part of the description, and will be rejected if it is inconsistent with the actual area, when the same is capable of being ascertained by monuments and boundaries. The mention of the quantity of land conveyed may aid in defining the premises, but it can not control the rest of the description." *Collinsville Granite Co. v. Phillips*, 123 Ga. 830, 842 (11) (51 SE 666) (1905); *Kendall v. Wells*, 126 Ga. 343 (55 SE 41) (1906). The absence of title to part of the land described is distinguished from a deficiency in area. *Holliday v. Ashford*, 163 Ga. 505 (136 SE 524) (1927); *Godwin v. Maxwell*, 106 Ga. 194 (32 SE 114) (1898); *Smith v. Eason*, 46 Ga. 316 (1872); *Lunsford v. King*, 132 Ga. App. 749 (209 SE2d 27) (1974). "When land is conveyed by metes and bounds, whether there be more or less than the quantity named, the purchaser obtains the whole of it. . . . If the quantity conveyed is specified as 'more or less,' it is generally understood that the parties assume the risk of a gain or loss in the quantity estimated. . . . A deed that describes a tract as containing a definite area and that gives definite boundaries on three sides but an indefinite boundary on the fourth, in the absence of a manifest contrary intent, will be deemed as locating the fourth side parallel to the side opposite it so that the tract encloses the area specified." (Footnotes omitted.) Cadle, supra at 422-423; *Sewell v. Sprayberry*, 186 Ga. 1 (196 SE 796) (1938); *Shackelford v. Orris*, 129 Ga. 791 (59 SE 772) (1907); *Walden v. Walden*, 128 Ga. 126 (57 SE 323) (1907). When there are no metes and bounds, the area is stated with exact specificity, the description is limited within a land lot, and the description is located within a general geographic portion of the land lot, the trial court, to avoid voiding the deed as indefinite, should construe the deed as occupying a certain portion of the land lot in a square or rectangular shape, utilizing the land lot lines as the definite boundaries and the other boundaries as parallel to such land lot lines, based on an area filled. However, such method of determining boundaries is not applicable when the deed gives definite boundaries that can be found on the ground with reference to monuments, physical objects, either natural

or man-made, adjoining property, or land lot lines. Under such boundary determination using land lot lines and acreage, the land lot line is the only certain boundary. See *Payton v. McPhaul*, 128 Ga. 510 (58 SE 50) (1907); see also *Bennett v. Rewis*, 212 Ga. 800 (96 SE2d 257) (1957); *Head v. Lee*, 203 Ga. 191 (45 SE2d 666) (1947); *Grace v. Rouse*, 202 Ga. 720 (44 SE2d 762) (1947); *Guess v. Morgan*, 196 Ga. 265 (26 SE2d 424) (1943); *Smith v. Fed. Land Bank*, 181 Ga. 1 (181 SE 149) (1935); *Rowland v. Mathews*, 153 Ga. 849 (113 SE 442) (1922); *Harper v. Hesterlee*, 152 Ga. 251 (109 SE 902) (1921); *Clower v. Godwin*, 140 Ga. 128 (78 SE 714) (1913); *Moody v. Vondereau*, 131 Ga. 521 (62 SE 821) (1908); *Osteen v. Wynn*, 131 Ga. 209 (62 SE 37) (1908); *Gress Lumber Co. v. Coody*, 94 Ga. 519 (21 SE 217) (1894). If an area is indefinite and the description does not fix the boundaries, then the description is void. *Mathews v. Logan*, 242 Ga. 69 (247 SE2d 865) (1978); *Brown v. Mitchell*, 225 Ga. 115 (166 SE2d 571) (1969); *Livingston v. Livingston*, 210 Ga. 607 (82 SE2d 1) (1954); *Crider v. Woodward*, 162 Ga. 743 (135 SE 95) (1926); *Darley v. Starr*, 150 Ga. 88 (102 SE 819) (1920); *Sweat v. Mullis*, 145 Ga. 450 (89 SE 422) (1916). The indication of more or less or use of "+" and "–" symbols means the same thing, an indefinite or approximate acreage; such designation has no legal value in determining boundaries. See *Hanners v. Woodruff*, 257 Ga. 73 (354 SE2d 826) (1987); *Mathews v. Logan*, supra; *Bennett v. Rewis*, supra; *Huntress v. Portwood*, 116 Ga. 351, 355 (42 SE 513) (1902). However, boundaries are definitely described, even without metes and bounds, such boundaries cannot be ignored, and even with a deed for specific acreage, the acreage must yield to the definitely described boundaries.

The foregoing analysis is inapplicable in the case sub judice, because all four boundaries were definite and certain, based upon a natural monument (creek), man-made boundaries (roads), abutting property lines, and the land lot line, even though the land lot line had not been previously surveyed and located on the ground, because the land lot line is an exact description that can be located on the ground. In addition, the 1931 Westbrook recorded plat gave metes and bounds and specified an approximate acreage in each land lot, which is not an exact determination of acreage, and the 1931 survey plat was referenced in both deeds; therefore, the deeds are limited by such plat, notwithstanding that the subsequent deeds out of the Cleveland Estate purport to convey an exact acreage at public sale. Although the 1931 survey showed an indefinite acreage on the plat by the use of "+" and "–" after each acreage, the two deeds to the parties were specific and definite in amount. This was a major defect in the deeds, which was controlled by the 1931 plat and which must yield to the actual acreage within the boundaries set by each deed, instead of forcing an artificial dividing line as the boundary line.

While the deeds out of the Cleveland Estate gave exact acreage figures, the 1931 Westbrook plat indicated that the acreage lying in each land lot was more or less such acreage, and such acreage was subsequently used in the respective deeds in error; therefore, the exact acreage must yield to the recorded plat as inexact acreage. Unlike the case of *Allen v. Hiwassee Land Co.*, 162 Ga. App. 356, 357 (290 SE2d 492) (1982), where the boundary line was uncertain and a specific conveyance of acreage was used to assist in determining where the boundary line probably lay based upon the metes and bounds, in the case sub judice, all boundaries except the land lot line were platted on the 1931 survey, and the land lot line was a specific, ascertainable boundary established by the State, used by the grantors, and set forth in the deeds. This land lot line not only serves as the boundary line between the two tracts but also the deeds limited each conveyance within the respective land lots. Such specific intent of the grantor cannot be arbitrarily disregarded by shifting the dividing line to provide an exact acreage, because this boundary is more than a mere dividing line but is a land lot line that is necessary in establishing other land lot lines in the Fourth District as well as the boundary between coterminous property owners. Id.; see also *Allen v. Hiwassee Land Co.*, 172 Ga. App. 814 (324 SE2d 742) (1984). Even the conveyance of an exact amount of acreage must yield to known boundaries established by survey or location of the land lot line. See *Thompson v. Hill*, supra; see generally *Payne v. Terhune*, 212 Ga. 169, 170 (91 SE2d 348) (1956); *Heard v. Helms*, 210 Ga. 669 (82 SE2d 129) (1954); *Gunnin v. Carlile*, 195 Ga. 861 (25 SE2d 652) (1943); see also *Nelms v. Dorsey*, 168 Ga. App. 452 (309 SE2d 426) (1983).

Storey testified that he held acreage to be of paramount importance in determining the location of the dividing line between the two parcels of land and a determination of the location of the land lot line. Storey did not seek to determine on the ground the location of the land lot line, although the land lot line was the common boundary stated in the deeds, but instead, determined a dividing line based on the specific acreage in the deeds, although the acreage was limited to separate land lots and shown on the 1931 survey as indefinite in amount. Storey admitted that the Westbrook survey of 1955 and the Mitchell survey of 1994 both located and placed monuments where the land lot line between Land Lots 76 and 77 was located on the ground. Storey testified that the land lot line was not the boundary, notwithstanding that the deeds used the land lot line as the boundary between Land Lots 76 and 77. In his opinion, the acreage and the 1931 survey forced the boundary line and the appellee's deed should have shown that the land lay in both Land Lots 76 and 77, because it was necessary to cross the land lot line to give appellee the exact acreage called for in the deed and to establish the dividing line. The

appellee's deed, by assent, did not convey to her a specific acreage but, by its express language, conveyed only a "tract or parcel" of land with "more or less" acreage. See *Roberts v. Groover*, supra.

Since such opinion is contrary to the law as to the determination of boundary lines by disregarding that each deed located the tract as existing exclusively in one land lot and recognizing the definite boundary as the land lot line, and since Storey admits that the land lot line was correctly determined by the Westbrook survey of 1955 and the Mitchell survey of 1994, then there was no probative evidence to support the jury verdict and judgment decreeing the boundary line as set forth in the verdict. The trial court erred as a matter of law in entering the judgment. The case is reversed and remanded for a new trial.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., concurs. Ruffin, J., concurs in judgment only.*

DECIDED FEBRUARY 19, 1997 —
RECONSIDERATION DENIED MARCH 5, 1997.

*Newton & Howell, John T. Newton, Jr.*, for appellant.
*Howard P. Wallace*, for appellee.