## A99A0082. CLARK v. STAFFORD.

(522 SE2d 6)

RUFFIN, Judge.

Beatrice Clark sued Doris Stafford to establish the boundary line between the parties' adjoining properties and to recover damages for certain timber allegedly cut by Stafford on Clark's property. Stafford filed a counterclaim seeking to have the boundary line established in her favor. A jury found in favor of Stafford and awarded her $9,075 in attorney fees and expenses of litigation. Clark appeals, contending that there was no evidence to support the verdict or the award of attorney fees, that the trial court erred in admitting certain plats into evidence, and that the trial court erred in giving a jury instruction. We affirm.[1]

Clark, then known as Beatrice Taylor, purchased certain property in Jeff Davis County in 1946. The deed described the property as containing 150 acres, "more or less," and stated that the property was bordered "on the East by agreed lines and lands of the estate of Henry McLoon," who was Stafford's father. The deed did not refer to a plat or provide a metes and bounds description of the conveyed property.

In 1954, the heirs of Henry McLoon conveyed his property to his widow, Leona Bailey Carter, for life, with the remainder interest going to Oliver McLoon. The deed incorrectly described the property as being bordered on the west by "lands of Tot McLoon," although the land was in fact bordered by Clark's property. Oliver McLoon subsequently conveyed the property by deed to Catherine Harrell, Stafford's sister. This deed also described the property as being bordered on the west by lands of Tot McLoon. On July 10, 1992, Catherine Harrell conveyed this property to Stafford in settlement of a dispute over their brother's estate. However, in describing the property conveyed, the deed referred to a recorded plat prepared by Walter Copeland in 1991, which plat was in turn a recreation of an earlier recorded plat prepared in 1956 by James Alva Wooten for Leona Bailey Carter.[2] The deed described the conveyed property as being bound on the southwest "for a portion of the way by lands of [Clark], and for the remainder of the way by the west original land lot line of said Land Lot # 364, all as shown according to the plat above-referenced."

As shown in the attached diagram, the 1956 plat (as recreated by

---

[1] We note that appellee has failed to file a brief on appeal. Accordingly, "we will accept appellant's statement of the case as prima facie true and decide the case on the basis of this statement and the evidence cited and quoted in support thereof." *Jones v. Cooke*, 169 Ga. App. 516 (1) (313 SE2d 773) (1984).

[2] The county tax assessor testified that he had Copeland prepare a recreation of the 1956 plat because the original plat had become nearly illegible. Copeland did not resurvey the property at this time, but simply prepared a copy of Wooten's 1956 survey. Wooten had died by the time Copeland prepared the recreated plat.

Copeland) shows the property line running south along the original land lot line for 1,097.5 feet. A wire fence is shown running parallel to and 24 feet to the west of the land lot line, on Clark's property. To the east of the land lot line is Fox Branch creek, running in a southeasterly direction. The property line then runs generally east along a wire fence for 916.5 feet to an iron axle. Approximately halfway along its length, this easterly line crosses Fox Branch; the portion of the line to the east of Fox Branch is identified on the plat as a "blazed line" and an "agreed line." From the iron axle, the line runs generally south for several hundred feet, again crossing Fox Branch. This portion of the line is also identified as an "agreed line." The 1956 plat contained a notation stating: "Note: All interested parties present while running Agreed Lines, Agreed Timber Lines."

The dispute in the present case concerns a strip of timberland between the original land lot line of land lot 364 on the west and Fox Branch on the east. Clark contends that her property extends east to Fox Branch, while Stafford contends that the property line at that point is the original land lot line, farther west. The jury was presented with a special interrogatory asking it to find that the boundary line was either Fox Branch or the line reflected in Stafford's plat, and it found in favor of Stafford.

1. Clark contends the trial court erred in admitting the 1956 and 1991 plats into evidence because there was no testimony establishing the accuracy of the plats. This contention is without merit.

A survey or plat made by a county surveyor pursuant to OCGA § 36-7-12 constitutes presumptive evidence of the facts contained therein. *Durden v. Kerby*, 201 Ga. 780, 781 (41 SE2d 131) (1947). An unofficial survey, as in this case,

> carries no presumptive value as evidence of the facts, although, if verified by oral testimony, it is admissible as a part of and as illustrative of such oral testimony for whatever it may be worth. The above rule is in accord with the generally accepted practice of admitting plats or diagrams for whatever they may be worth; not as original, independent evidence, but on the theory that they are nothing more than verified pictorial representations of matters about which the witness has properly testified, and as being a desirable expediency by which to illustrate the witness's testimony as to the location of the land thus represented.

Id. at 782.

Payne Copeland testified that in 1995, after this action was filed, he conducted a survey of Stafford's property to locate the lines marked in Wooten's 1956 survey. He testified that he found remnants of the fence lines referred to in the old survey; a blazed tree along the

eastern boundary line marked as a "blazed line" in the old survey; the iron axle marking the turning point of the eastern line in the old survey; and a black gum tree marking the southeast end of the property line in the old survey. Although some of these items were slightly off of the lines identified in the 1956 survey, Copeland testified that "[s]eldom do we find that we have an exact agreement."

In this case, the trial court specifically stated that it would admit the plats because they were in Stafford's chain of title and because they provided a basis for her belief that the disputed property belonged to her. Because Stafford's deed described the conveyed property by reference to the plats, the plats were clearly admissible to show the extent of property encompassed by the deed. Moreover, at the time the plats were admitted, Clark was seeking punitive damages against Stafford for cutting down timber on the disputed land. Punitive damages are not authorized where there is a "good faith and honest belief on the part of a defendant as to [her] ownership of the property in dispute." *Gilman Paper Co. v. James*, 235 Ga. 348, 351 (219 SE2d 447) (1975). Clearly, the fact that Stafford's deed referred to a recorded plat showing that she owned the disputed property is relevant to the issue of Stafford's good faith in cutting down trees on the property. Accordingly, the trial court did not err in admitting the plats.[3]

2. Clark contends that the trial court erred in denying her motion for new trial because there was no evidence that the line claimed by Stafford was in fact the true boundary line.

In analyzing this assertion of error, it is important to consider the peculiar nature of this case and the issue presented to the jury. During a bench conference in the middle of trial, the court expressed its concern that, given the inadequacy of both parties' deeds, neither party might be able to prove that her proposed boundary line was in fact correct. Clark's attorney expressly stipulated to the court that the property line was *either* Fox Branch *or* the line set forth in Stafford's plat, "no in between," and that it was up to the jury to set the line. Implicit in this stipulation is an admission that the jury's rejection of either party's proposed line would be sufficient to support a finding in favor of the other party. At Clark's request, the jury was given a special verdict form requiring it to choose between the two options, and the jury was not given the option of rejecting both Clark's and Stafford's proposed boundary lines.[4] As we have held pre-

---

[3] After the close of evidence, Clark abandoned her claim for punitive damages, but did not seek to have the previously admitted plats removed from the jury's consideration in light of this withdrawal.

[4] The special verdict form originally proposed by Stafford would not have required the jury to choose between two options, but would have simply asked the jury where the boundary line was.

viously, "a party will not be heard to complain of error induced by his own conduct, nor to complain of errors expressly invited by him during the trial of the case." *Southern Nitrogen Co. v. Manuel*, 110 Ga. App. 597 (3) (139 SE2d 453) (1964), overruled on other grounds, *Crawford v. Randle*, 191 Ga. App. 112, 116 (381 SE2d 77) (1989). Accordingly, if the jury had any basis to disbelieve Clark's claim that Fox Branch was the dividing line or to prefer Stafford's proposed line over Clark's, Clark cannot now complain that the jury lacked a sufficient basis to find in favor of Stafford.

With this in mind, it is helpful first to consider whether the evidence demanded a finding that Fox Branch was the proper boundary, as claimed by Clark. Nothing in Clark's deed indicated that Fox Branch was the boundary line. Rather, the deed simply stated that the property was bordered on the east by "agreed lines and lands of the estate of Henry McLoon." Clark did not offer into evidence any prior deeds in her chain of title that might have described the boundary line with more specificity, nor did she produce any survey showing the creek as the boundary. She presented no evidence that her and Stafford's predecessors in title had ever agreed that Fox Branch was the boundary between their respective properties. Indeed, the only evidence touching on this issue is Clark's subjective statement that she had always considered Fox Branch to be the boundary line, although she provided no objective basis for this belief. When questioned by the trial court, Clark's counsel appeared to admit that there was no evidence Fox Branch was intended to be the original boundary line, stating that "I think it boils down to either acquiescence, if we can prove an agreement, which I don't think either side can, or prescription."

Although Clark now asserts that she obtained title to the disputed property by prescription or acquiescence, the evidence does not show that she actually exercised notorious and exclusive possession of the disputed area up to Fox Branch or that she openly claimed ownership up to that line. See OCGA §§ 44-5-161 (a) (3); 44-5-165; 44-4-6. There was an old wire fence running parallel to, and 24 feet to the west of, the original land lot line, apparently built before Clark purchased her property. There was no gate on the fence allowing access to the other side. Clark's husband testified that he did not know who built this fence. At some undisclosed time, Clark's husband moved this fence 28 feet to the east. However, this simply resulted in the fence being four feet to the east of the original land lot line, Stafford's proposed boundary, and well to the west of Fox Branch. There is no evidence that Clark ever put Stafford or her predecessors on notice that she claimed ownership of all property up to Fox Branch. Although Clark's husband testified that he had taken firewood and cut some posts from the property, it is not clear whether he was referring to the area between the land lot line and Fox

Branch, or simply the area to the east of the original fence line. More-over, there is no evidence as to when or how often he would take wood from the property.

Clark testified that, in 1956, a surveyor (presumably Wooten) came onto her property to survey the land. After the surveyor put one foot over Clark's fence, Clark threatened to shoot him if he put the other foot across. Although Clark contends that this shows her claim of ownership to the disputed property, it could just as easily be inter-preted as claiming ownership only to the original fence line, well to the west of Fox Branch.

As the foregoing makes clear, the evidence did not demand a finding that Fox Branch is in fact the boundary between the two properties, whether by original grant, prescription, or acquiescence. Indeed, apart from Clark's subjective statement that she had always considered Fox Branch to be the boundary, there is little evidence to support her claim. From its verdict, it is clear that the jury rejected Clark's contention that Fox Branch was the boundary. Accordingly, based on the special verdict form submitted by Clark, the jury had no alternative but to find in favor of Stafford, and Clark cannot com-plain on appeal that Stafford did not prove the validity of her pro-posed line.

Moreover, there was evidence from which the jury could have preferred Stafford's proposed boundary line to Fox Branch. Clark's deed indicated that her property was bordered on the east by "agreed lines and lands of the estate of Henry McLoon." As discussed above, there was an old wire fence running parallel to the original land lot line, although inside Clark's property. In addition, there was a wire fence running east almost directly along a different section of the property line as shown in Stafford's plat. "[A]rtificial boundaries include fences . . . and land lot lines; they are evidence of the points which landowners past or present had in mind in their contractual dealings with one another." *KDS Properties v. Sims*, 234 Ga. App. 395, 397 (2) (506 SE2d 903) (1998). "The question of intention in erecting and maintaining a fence is a question for the jury." *Martin v. Patton*, 225 Ga. App. 157, 160 (1) (483 SE2d 614) (1997). The exis-tence of fences on or near the property lines proposed by Stafford was a factor the jury could consider in preferring her proposed lines as opposed to Clark's line.

In addition, G. W. Carter, a witness for Stafford, testified that he was present when Wooten conducted his 1956 survey. He testified that Clark was present some of the time while the survey was being conducted, and that another individual, M. C. Spires, was acting on Clark's behalf and agreed to the property lines shown in the survey. Regardless of whether there was sufficient evidence that Spires had authority to make any such agreement on Clark's behalf, this evi-dence is significant in that it shows that Clark had knowledge of the

survey conducted by Wooten. Thus, the jury could have concluded that Clark was aware of the boundaries claimed by Stafford's predecessor in title and acquiesced in those boundaries by failing to raise any objections for the next 40 years. See OCGA § 44-4-6.

In sum, the jury had a valid basis for rejecting Clark's contention that Fox Branch was the boundary between the two properties and for preferring Stafford's proposed line to Clark's. Since Clark stipulated that, if Fox Branch was not the boundary, it must be as shown on Stafford's plat, Clark cannot now complain that the jury had no basis for establishing the line in Stafford's favor.

3. Clark contends that the trial court erred in charging the jury that "arithmetic calculations for acreage contained in an enclosure established by metes and bounds and the physical evidence can be properly considered by you, the jury, in determining a true location of a boundary line." Clark contends that the charge was improper because there was no competent evidence the jury could use to perform mathematical calculations of acreage in this case. However, Clark fails to offer any argument whatsoever as to how such a charge was harmful. Because harm as well as error must be shown to warrant reversal, this enumeration is without merit. See *Wozniuk v. Kitchin*, 229 Ga. App. 359, 361 (2) (494 SE2d 247) (1997).

4. Finally, Clark contends that the trial court improperly allowed the award of attorney fees to Stafford. However, Clark does not support this enumeration in her brief with a single citation to the record or to authority, nor does she provide any argument other than to state conclusorily that there is no evidence she acted in bad faith.[5] This is not the kind of argument required to preserve an enumeration for appellate review, but simply invites this Court to review the entire record and all relevant authority to determine whether an award of attorney fees was appropriate. See *Green v. State*, 208 Ga. App. 1, 2 (2) (429 SE2d 694) (1993) (" 'principal purpose of argument is to provide guidance to this court on the basis for a claim of error and for citations of authority which tend to support appellant's allegation of error' "); *Darnell v. Houston County Bd. of Ed.*, 234 Ga. App. 488, 491 (2) (506 SE2d 385) (1998) (court will not cull record in search of error on behalf of party). In the absence of proper argument, citation to the record, or citation to authority, we will not consider this enumeration. See *Green*, supra; *Starrett v. Commercial Bank of Ga.*, 226 Ga. App. 598, 601 (2) (486 SE2d 923) (1997); *Daniel v. Lipscomb*, 225 Ga. App. 135, 138 (3) (483 SE2d 325) (1997).

---

[5] Clark does not even conclusorily deny the existence of the other grounds for an award of attorney fees under OCGA § 13-6-11 — i.e., stubborn litigiousness or causing the other party unnecessary trouble and expense.

-- A PLAN OF LAND --

Belonging to Leona Bailey Carter, Located in Land Lots
No 364 and No 371 of the First Land District of
Jeff Davis County, Georgia.

January 14, 1956

I certify that this plat is correct and
a true representation of the conditions
on this property.

JAMES ALVA WOOTEN

Georgia Registered Survey No 897
Member of Georgia Association of
Registered Land Surveyors

E. L. GIRTMAN ESTATE.

LOT NO. 371
21.075 ACRES

Scale. 1 in = 330 ft

LOT NO. 364
48.325 ACRES

MRS BEATRICE TAYLOR

MRS W.T. SCHELL

HARRIS E. JOHNSON

NOTE: All interested parties present
while running Agreed Lines,
Agreed Timber Lines.

AREA DETERMINED BY PLANIMETER

NOTE: THIS IS A RE-CREATION OF A PLAT BY JAMES WOOTEN,
DATED JANUARY 14, 1956 AND RECORDED IN PLAT BOOK 1,
PAGE 21. THIS PLAT IS PREPARED FOR CLARIFICATION
PURPOSES ONLY. COPELAND AND ASSOCIATES DID NOT
RE-SURVEY ANY PROPERTY LINES AND CAN NOT GUARANTEE
THE ACCURACY OF THIS PLAT.

SURVEY FOR:

LEONA BAILEY CARTER

| LAND LOT | LAND DIST | COUNTY | CITY | STATE | DATE |
|---|---|---|---|---|---|
| 364, 371 | 1 st | JEFF DAVIS | | GEORGIA | MARCH 22, 19.. |

IRON PIN/PIPE FOUND ●
IRON PIN SET ○
CONC. MONU. FOUND ■
CONC. MONU. SET □
NO CORNER SET △

COPELAND & ASSOCIATES
SURVEYING CONSULTANTS
P.O. BOX 1964•PHONE (912)632-5213
ALMA, GEORGIA 31510

Ga. Reg. L.S. # 2271
S.C. Reg. L.S. # 11064

WALTER P. COPELAND, R.L.S.

THEODOLITE. NONE
DISTANCE EQUIP: NONE
CLOSURE. NONE
ANGLE CLOSURE NONE
ADJUSTMENT: NONE
ADJUSTED CLOSURE. NONE
FIELD SURVEY BY: NONE
FIELD BOOK: NONE
SURVEY DATE: NONE
REF. JOBS. NONE
PLAT BY. P.D.
JOB NO.

*Judgment affirmed. McMurray, P. J., and Andrews, P. J., concur.*

DECIDED JULY 1, 1999 —
RECONSIDERATION DENIED JULY 13, 1999

*Jason A. Craig*, for appellant.
*William K. Blackstone*, for appellee.